[Civ. No. 49113. First Dist., Div. Four. Feb. 28, 1983.]

SAFECO INSURANCE COMPANY OF AMERICA,
Plaintiff and Appellant, v.
SUE SALLY HALE et al., Defendants and Respondents.

**COUNSEL**

James D. Biernat and Richard B. Barrett for Plaintiff and Appellant.

Richard K. Harray and Harray & Rosecrans for Defendants and Respondents.

**OPINION**

**POCHÉ, J.**—Safeco Insurance Company (Safeco) appeals from a declaratory judgment determining that it is obligated under the comprehensive personal liability provisions of a homeowner's policy it issued to Alex and Sue Sally Hale to defend them in a lawsuit brought by Leanne Eberle for injuries sustained when a car collided with a horse which had wandered from the care of the Hales.

The judgment is affirmed.

### Facts

Safeco issued a homeowner's insurance policy to Alex and Sue Sally Hale. The dispute concerns Safeco's obligation to defend the Hales in an action by a

third person, Leanne Eberle, to recover for personal injuries arising from an automobile accident on Saturday, September 2, 1978.[1]

Sue Sally Hale operated the Carmel Valley Riding and Polo Center (Center), a business which boarded horses and gave horseback riding lessons and clinics. The Center was located approximately five miles away from her private residence where she also had facilities for stabling horses. Normally she kept about four horses there for her children's use.

In June or July, Sue Sally agreed to take care of "Boots," a horse owned by a friend, Penny Roaseau. Penny allowed Sue Sally's children to ride Boots and she provided all supplies for it. Sue Sally did not receive any compensation from Penny, nor was Boots used at the Center for business purposes. Boots was kept primarily at the residence.

On the Thursday before the accident, Sue Sally took Boots and the other horses from her residence to the Center for the horses' protection, because she and her family were to be away for a three-day polo match. On the night of the accident, Boots and another horse got out of the corral. Boots wandered two miles from the Center onto a county highway and was involved in a multicar collision in which Leanne Eberle suffered personal injuries, including brain damage. Eberle thereafter commenced a personal injury action in Monterey County against the Hales and others.

Safeco then brought this declaratory relief action seeking a determination of its nonliability under the homeowner's policy it issued to the Hales. Safeco contended that two exclusions applied to preclude coverage. These exclusions are set forth in the margin.[2] Safeco did not otherwise challenge the applicability of the policy.[3]

---

[1] Unless otherwise indicated, all further dates are to the 1978 calendar year.

[2] "This policy does not apply: [¶] 1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

". . . . . . . .

"d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits; [¶] e. to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured; but this exclusion does not apply to bodily injury to any residence employee arising out of and in the course of his employment by any insured; . . ."

[3] Although not at issue, we note the coverage provisions of the policy. The liability coverage of the policy extends to "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an *occurrence*." The medical payments coverage extends to "bodily injury . . . caused by an accident, . . . [which] is caused by *an animal* owned by or *in the care of* any insured" elsewhere than on the insured premises. (Italics added.)

In its memorandum of intended decision[4] the court found that neither exclusion applied and that therefore the homeowner's policy obligated Safeco to defend the Hales in Eberle's lawsuit.

## Discussion

### The proper standard of review.

Since no extrinsic evidence was introduced below to aid the trial court in interpreting the terms of the insurance policy, this court must make an independent determination of the meaning of the meaning of the policy's terms. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) Nevertheless, this court is bound by the trial court's *factual* findings on the underlying circumstances of the incident in question insofar as they are supported by substantial evidence. All factual conflicts must be resolved in favor of the judgment, and all reasonable inferences must be drawn in support thereof. (*Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143]; *Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

### The trial court did not err in finding that neither exclusion applied.

In analyzing the extent of either exclusion, this court is bound by the established rules for interpreting insurance policies: "Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates. Any reasonable doubt as to uncertain language will be resolved against the insurer whether that doubt relates to the peril insured against or other relevant matters. [Citation.] The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.] An exclusionary clause must be conspicuous, plain and clear [citation] and must be construed strictly against the insurer and liberally in favor of the insured [citations]." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

---

[4]Neither party requested findings of facts, but the trial court issued a detailed memorandum of intended decision. While the memorandum may not be used to impeach the judgment, it may be used as an explanation of the trial court's ruling and an aid to the interpretation of the judgment. (*Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 491, 493 [143 Cal.Rptr. 772]; *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 964, 995-996 [133 Cal.Rptr. 166]; see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 230, 231, pp. 4220-4222.)

■ One of the two bases upon which Safeco seeks a declaration of nonliability is the provision excluding coverage of "bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits; . . ."

Relevant to this issue, the trial court found that Boots was originally stabled at the Hales' residence premises as a favor to Penny Roaseau; that Boots was used neither in the business operation or activities of the Hales; that Penny did not pay a fee in exchange for the Hales' care of Boots. These facts, amply supported by the record lead to one conclusion: the injury arose out of a non-business pursuit. Accordingly, the business pursuits exclusion does not apply.

Safeco also finds applicable the exclusion "to bodily injury or property damage arising out of any premises, other than an insured premises, owned . . . or controlled by . . . insured . . . ." Since it is undisputed that the Center fits the definition of being "other than an insured premises" the sole question is whether Leanne Eberle's injury was one "arising out of" the Center's premises, the place from which Boots began her escape.

No California case has interpreted the words "arising out of" in a similar situation. Missouri has.

In *Lititz Mut. Ins. Co.* v. *Branch* (Mo.App. 1977) 561 S.W.2d 371, the problem was Baron, an eight-year-old Weimaraner owned by the Kables. Baron first got into trouble while at the Kable residence when he bit a neighbor boy. Shortly thereafter Baron was taken to the premises of the Kable Dairy Company. Less than a month later while tethered there he bit Amy Branch. Mr. Kable had Baron destroyed. Amy sued the Kables. The Lititz Mutual Insurance Company which had issued a homeowner's insurance policy to the Kables filed for declaratory relief. Like Safeco in the case at hand, it claimed that the bodily injury arose out of premises (the Dairy) other than the insured premises (the residence) controlled by the insured.

Initially, the Missouri Court of Appeals engaged in a definitional analysis, found no cases interpreting " 'arising out of' " in similar fact situations, but in other contexts found that term to mean "originating from, or having its origin in, or growing out of, or flowing from." (At p. 373.)

Next the court examined "premises": "It is apparent that 'premises' in common parlance and in the policy itself contemplates the land and more or less permanently affixed structures contained thereon. It does not contemplate easily movable property which may be located on the property at a given time or even on a regular or permanent basis. A dog, whether permanently kenneled or tethered on the property, is not a part of the premises. [¶] It cannot therefore be

said that a dog bite arises out of—originates from, grows out of, or flows from—the premises. That it *occurs upon the premises* does not establish a causal connection between the bite and the premises. We find that the language used does not contemplate that the exclusion applies to liability arising from a dog bite occurring on the [insured's business premises]. [Citation.]" (At p. 373, italics added.)

We agree that an animal—whether dog or horse—is not within the fair connotation of the word "premises" so that when the animal is taken from one "premises" to another "premises" and there bites a child the injury to the child cannot be said to be "arising out of" either premises. Such a conclusion is compelled (1) by the words chosen by the insurance company, and (2) by our obligation to construe any exclusion strictly against the insurer and liberally in favor of the insured. (*Crane* v. *State Farm Fire & Cas. Co.*, *supra*, 5 Cal.3d at pp. 115-116.)

Any lingering doubt is dissipated by the remainder of the court's reasoning in *Lititz*. Not content to rest its decision on definitions alone, the Missouri appellate court continued to explore what it described as "the obvious purpose of the liability coverage and the exclusions provided from such coverage. The personal liability insured against is of two kinds: first, that liability which may be incurred because of the condition of the premises insured; secondly, that liability incurred by the insured personally because of his tortious personal conduct, not otherwise excluded, which may occur at any place on or off the insured premises. The insurance company may well limit (and has by exclusion 1(e)) its liability for condition of the premises to the property insured for which a premium has been paid. It is reasonable that the company may not provide for liability coverage on 'conditions' which cause injury on other uninsured land. It would be a rare case where an insured was liable for the condition of premises which he did not own, rent or control. It is to be expected, therefore, that the company's liability for condition of the premises would be restricted to accidents happening on or in close proximity to the insured premises, and that premiums would be charged with that in mind. It would be unreasonable to allow an insured to expand that coverage to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the company. [¶] The company has not chosen to geographically limit the coverage provided for tortious personal conduct of the insured. If it had so intended, it could simply have provided that the exclusion ran to an accident 'occurring on' other owned premises. There appears to be little reason to exclude personal tortious conduct occurring on owned but uninsured land, as little correlation exists between such conduct and the land itself. Liability for injuries caused by an animal owned by an insured arises from the insured's personal tortious conduct in harboring a vicious animal, not from any condition of the premises upon which the animal may be located. The language used in exclu-

sion 1(e) recognizes this distinction." (*Lititz Mut. Ins. Co.* v. *Branch, supra*, 561 S.W.2d at p. 374.) The Court of Appeals directed the entry of judgment declaring that the policy provided personal liability coverage.

The reasoning in *Lititz* is particularly persuasive in the instant situation where the Safeco policy demonstrates on its face that its drafters were aware of the method of limiting geographically the insurer's liability for tortious conduct. The Safeco policy contained such a restriction with respect to bodily injury arising from the ownership, maintenance or use of a recreational motor vehicle: "This policy does not apply: . . . a. to bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . (3) any recreational motor vehicle owned by any insured, *if the bodily injury or property damage occurs away from the residence premises*; . . ." (Italics added.)

Instead, Safeco has chosen not to so limit the tortious conduct occurring on owned but uninsured land. Since the injuries caused by Boots originated from the allegedly tortious conduct of the Hales in failing to secure the horse on the Center's premises, and not from any condition of the premises on which the animal was located, the language of exclusion 1(e) does not apply.[5]

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied March 22, 1983, and appellant's petition for a hearing by the Supreme Court was denied May 19, 1983. Richardson, J., was of the opinion that the petition should be granted.

---

[5]Safeco's reliance on *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841], is misplaced. There, the California Supreme Court interpreted a homeowner's policy which excluded coverage for damages resulting from "'the ownership, maintenance, operation, use, loading or unloading of (1) automobiles [defined as a "land motor vehicle"] or midget automobiles while away from the premises or the ways immediately adjoining, . . .'" (At p. 196.) The court's task was to define the term "'ways immediately adjoining.'" While the court found the term "somewhat imprecise" it did not defy reasonable construction under the facts before the court: that is, an accident on a freeway. The court thus concluded the geographical exclusion applied. (At pp. 198-199.)

As noted, there is no geographical limitation on the conduct at issue in the instant case.