[No. B014499. Second Dist., Div. Six. Aug. 14, 1986.]

FIRE INSURANCE EXCHANGE, Plaintiff and Appellant, v.
MANUEL JIMINEZ, Defendant and Appellant.

438

**COUNSEL**

Archbald & Spray, Kenneth L. Moes, Brian E. Hill and James P. Gazdecki for Plaintiff and Appellant.

Rogers & Sheffield and Dennis W. Leski for Defendant and Appellant.

## OPINION

**YEGAN, J.**\*—From a declaratory relief judgment, Fire Insurance Exchange (hereinafter Exchange) appeals the determination that it has a duty to defend its insured, Manuel Jiminez (hereinafter Jiminez), in a personal injury suit pending in the superior court. Jiminez has filed a cross-appeal and seeks relief from another aspect of the judgment which, notwithstanding the duty to defend, declares that Exchange is not required to indemnify him for any damages as a result of the underlying lawsuit.

On its appeal, Exchange contends: "I. An insurer has no duty to defend an insured where the exclusion of coverage is clear and the duty to defend is conditioned on coverage. II. The Ohio Casualty case [*Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939 (208 Cal.Rptr. 806)] relied on by the trial court is distinguishable." These contentions are meritorious.

On his appeal, Jiminez contends: "[I.] The knocking down of a lean-to porch which had become a nuisance is not a business pursuit of the insured. [II.] The allegedly negligent injury sustained during the course of knocking down the lean-to porch, which had become a nuisance, is a direct loss from activity normally considered non-business." These contentions are without merit.

In 1979, Jiminez purchased a "Dwelling Package Policy" of insurance from Exchange which listed 962 Cheltenham Road as the "Location of Property Insured." Jiminez did not disclose that he also owned a large commercial building at 434 Haley Street in Santa Barbara, a portion of which he used for his own produce business and 6,000 square feet of which he leased to Santa Barbara Ceramic Design. Moreover, Jiminez never told his insurance agent that he wanted insurance on his place of business and was advised that the homeowner's policy would not cover "business pursuits." Accordingly, the 434 Haley Street commercial building is not mentioned in the policy. On the reverse side of the policy in bold print, the carrier advertises that "BUSINESS PROPERTY" and "COMMERCIAL COMPREHENSIVE LIABILITY" are "Other Lines Offered."

In 1982, Jiminez decided to remove a lean-to type roof connected to his commercial building. Richard Metzger, plaintiff in the underlying action

---

\*Assigned by the Chairperson of the Judicial Council.

for personal injury, received permission from Jiminez to salvage some of the materials in the roof. He was injured while doing so. When Metzger sued Jiminez, he looked to Exchange for defense and indemnification pursuant to the policy he purchased in 1979.

## EXCHANGE'S APPEAL

Under the heading of "COMPREHENSIVE PERSONAL LIABILITY," paragraph 43 of the subject policy provided that Exchange would ". . . pay all damages . . . because of bodily injury to any person . . . caused by an occurrence *to which this insurance applies.*" Under the same heading, paragraph 44 provided that Exchange would ". . . pay all reasonable expenses . . . to or for each person who sustains bodily injury caused by accident, *to which this insurance applies,* while such person is: [¶] (1) on an insured premises with the permission of any insured; or [¶] (2) elsewhere, if such bodily injury [¶] (a) arises out of a condition in the insured premises or the ways immediately adjoining, [¶] (b) is caused by the activities of any insured, or by a residence employee in the course of his employment by any insured, [¶] (c) is caused by an animal owned by or in the care of any insured, or [¶] (d) is sustained by any residence employee and arises out of and in the course of his employment by any insured." (Italics added.)

Paragraph 47 provided that Exchange would ". . . defend, at its own expense, any suit against the insured seeking damages on account of *such* bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." (Italics added.)

Under the subheading of "EXCLUSIONS," the policy provided, inter alia: "This insurance does not apply under . . . 53(d) to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits; [¶] 54(e) to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any insured . . . ."

After the court indicated that there could be no duty of indemnification pursuant to exclusions in paragraphs 53 and 54, the court, by minute order, ruled that there was nevertheless a duty to defend.[1]

---

[1] "The court finds that plaintiff, FIRE INSURANCE EXCHANGE, has a duty to defend defendant, JIMINEZ, under the language of the policy itself which states: [¶] 'The Company shall have the right and duty to defend, at its own expense, any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent.' [¶] The only exception to this general statement is the word 'such' which modifies 'bodily injury.' Since the claim by Metzger in the underlying personal injury suit is for bodily injury, it is the opinion of the court that as a matter of fact this language quoted above would not place a reasonable person on notice that the Company does not have a duty to defend a lawsuit even if the liability coverage of the policy would not cover a judgment obtained against the defendant, as are

█ Exchange's contentions are meritorious. We disagree with the trial court's view that the language concerning duty to defend "such" bodily injury or property damage claims ". . . would not place a reasonable person on notice that the Company does not have a duty to defend a lawsuit . . . ." Under this view, had Jiminez owned the Empire State Building, Exchange would have a duty to defend claims for bodily injury or property damage occurring there. No person could reasonably believe that the instant policy, with its exclusions for business pursuits and commercial rentals, could impose a "duty to defend" where the accident occurs on commercial property. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 274.)

█ It is true that "[a]n insurer's duty to defend is separate from its duty to indemnify. . . . The duty to defend is broader than the duty to indemnify and is measured by the reasonable expectation of the insured. [Citations.]" (*Ohio Casualty Ins. Co.* v. *Hubbard, supra,* 162 Cal.App.3d 939, 943-█ █ But there is no duty to defend here because the word "such" in paragraph 47 can only refer to the bodily injury or property damage "to which this insurance applies," set out in paragraphs 43 and 44. The trial court's interpretation would, in essence, erase the modifier "such" and replace it with "any bodily injury or property damage including those arising out of a 'business pursuit' or commercial rentals."

In *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 272, the policy provided, inter alia, that "'. . . the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false, or fraudulent' . . . ."

In the companion case of *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 299-300 [54 Cal.Rptr. 116, 419 P.2d 180], the policy provided, inter alia, that "'"with respect to such insurance as is afforded by this policy the company shall . . . defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.'"

---

the facts in the instant case (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273-275 [419 P.2d 168]). [¶] Plaintiff cites *Hartford Fire Insurance Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406 [191 Cal.Rptr. 37, 39 A.L.R.4th 189] which does contain language supportive of the position that the lack of insurance coverage abrogates the duty to defend. However, this case does not even discuss the rationale of *Gray* v. *Zurich, supra,* and the distinction between liability coverage and the duty to defend. [Fn. omitted.] [¶] The entire discussion in that case turned on the attempt by the insured to creatively broaden coverage and does not discuss that difference between coverage and duty to defend but seems to assume they are one in the same, which is clearly not the law under *Gray, supra.* Therefore, any language which would indicate that coverage and duty to defend are synonymous is clearly dicta and not controlling."

These "wide promises" (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 272) were held to encompass the duty to defend intentional torts. No questions concerning the "business pursuits" exception to the duty to defend the underlying torts were there in dispute. ■ "'[C]ourts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed.' [Citation.]" (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641]; *St. Paul Fire & Marine Ins. Co.* v. *Coss* (1978) 80 Cal.App.3d 888, 896 [145 Cal.Rptr. 836]; *Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].) As aptly restated in *Safeco Ins. Co.* v. *Hale* (1983) 140 Cal.App.3d 347, 353-354 [189 Cal.Rptr. 463], "'. . . [i]t would be unreasonable to allow an insured to expand that coverage [and duty to defend] to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the company. . . .'"

■ Nor does the "potential of liability" secondary theory of *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 277, compel a contrary conclusion. Unlike the situation in *Gray* where there was a "potential of liability" by virtue of theoretical amendment to the complaint to allege negligence, here there is no "potential of liability" since the uncontradicted evidence shows that Metzger was injured at 434 Haley Street. (See fn. 2, *infra.*)

### JIMINEZ' APPEAL

Paragraphs 53 and 54 of the subject policy, in pertinent part, provided that there was no coverage for ". . . bodily injury or property damage arising out of *business pursuits* of any insured except activities therein which are ordinarily incident to non-business pursuits . . . [and] arising out of any premises, *other than an insured premises,* owned, rented or controlled by any insured . . . ." (Italics added.)

■ The trial court expressly ruled that there was no coverage, i.e., duty to indemnify, and Jiminez' claims to the contrary must be rejected. Jiminez' motivation for the demolition of the lean-to type structure, that it was a nuisance on the commercial property, does not render it a non-business pursuit. Demolition of the nuisance would enhance the value of the property and is a business pursuit. That the demolition was a "one-time decision" does not render it any less of a business pursuit.

In *State Farm Fire & Casualty Co.* v. *Drasin* (1984) 152 Cal.App.3d 864, 870 [199 Cal.Rptr. 749], it is noted ". . . that applicability of the business pursuit exclusion turns on the motivation for the pursuit[,] . . . the presence of the profit motive carries considerable weight, and that the

business engaged in need not be the sole occupation. Part-time business activities are also included under business pursuits exclusions. [Citation.] [¶] Other jurisdictions have defined a business pursuit as a regular activity engaged in for the purpose of earning a profit. This includes part-time or supplemental income projects. [Citations.] 'Business,' as defined in [California] Revenue and Taxation Code section 6013, 'includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect.' The central theme being espoused . . . is regular activity with the motivation for profit or gain.''

Jiminez' focus on his "one-time decision" to demolish, which he claims is not "'regular activity,'" is too narrow. The true determinative focus is that he had been engaged in the business pursuit of owning the commercial premises for profit since 1972. This business pursuits exclusion is "'conspicuous, plain and clear.'" (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 273; *Ohio Casualty Ins. Co.* v. *Hubbard, supra,* 162 Cal.App.3d 939, 947.) Had Metzger been similarly injured at 962 Cheltenham, coverage and defense would have been forthcoming. Since it occurred at Jiminez' commercial property, there is simply no provision therefor.[2]

Insofar as the trial court determined that Exchange has no duty to indemnify, the judgment is affirmed. Insofar as it determined that Exchange has a duty to defend, the judgment is reversed. As prevailing party on both appeals, Exchange is entitled to costs on appeal.

Gilbert, Acting P. J., and Abbe, J., concurred.

A petition for a rehearing was denied September 12, 1986, and the opinion was modified to read as printed above. The petition of defendant and appellant for review by the Supreme Court was denied November 25, 1986.

---

[2]At oral argument and for the first time on appeal, Jiminez claimed that his cause of action for general negligence requires Exchange to both defend and indemnify notwithstanding the excluded situs where the injury occurred and the excluded business pursuits motivation therefor. Our Supreme Court, however, anticipating imaginative counsel and the likelihood of artful drafting, has plainly indicated that ". . . we should hardly designate the third party [counsel for plaintiff in the underlying lawsuit] as the arbiter of the policy's coverage." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 276.) Were we to credit Jiminez' theory, mere allegations of "general negligence" would erase exclusions in any policy. Here, the underlying occurrence was "wholly dependent" on Jiminez' business pursuits (*Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 415 [191 Cal.Rptr. 37, 39 A.L.R.4th 189]) and it cannot fairly be said that Jiminez' activities were ". . . ordinarily incident to a nonbusiness pursuit." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)