**George P. BOWIE; William L. Gregory, Plaintiffs–Appellants,**

v.

**The HOME INSURANCE COMPANY; New England Insurance Company, Defendants–Appellees.**

**No. 89–55723.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Jan. 15, 1991.

Roger L. Stanard, Walleck, Shane & Stanard, Woodland Hills, Cal., for plaintiffs-appellants.

William G. Lieb, Bodkin, McCarthy, Sargent & Smith, Los Angeles, Cal., Jeffrey A. Charlston and Robert Keaster, Charlston, Revich & Williams, Los Angeles, Cal., for defendants-appellees.

Before BOOCHEVER, BEEZER and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

George P. Bowie and William L. Gregory brought this diversity action in California against Home and New England Insurance Companies, insurers of a corporation for which they were directors, for failure to defend and indemnify them with respect to

an action against them and others for alleged errors and omissions committed as officers and directors of another company. Finding that Bowie and Gregory were not insureds under the Home and New England policies, the district court dismissed for failure to state a claim. Bowie and Gregory appeal.

## I.

Bowie and Gregory were former officers and directors of Transit Casualty Company (Transit). During the same period they were directors of DMT Financial Group (DMT). DMT, its officers, and its directors were insured under an errors and omissions policy issued by The Home Insurance Company. New England Insurance Company (along with Home, "the insurers"), as excess carrier, adopted the terms and conditions of the Home policy.

In January 1980, Transit's officers and directors implemented a Risk Management Plan under which Transit "fronted" insurance policies under its name. To facilitate this operation, various Managing General Agents were hired to underwrite and service certain insurance lines, and to solicit reinsurers that would cover substantially all Transit's risks under these policies. One of the Managing General Agents hired was Donald F. Muldoon & Co., a wholly-owned subsidiary of DMT. Because the distinction between Donald F. Muldoon & Co. and DMT is inconsequential to this case, we refer to both as DMT.

In late 1985, Transit was declared insolvent by a Missouri court. Prior to the declaration of insolvency, Transit had brought an action in the United States District Court for the Northern District of Texas (the Texas action) against one of the Managing General Agents, Carlos Miro & Associates. The action was later taken over by the Receiver who subsequently filed an amended complaint adding DMT as a defendant. In its capacity as a Managing General Agent, DMT was alleged to have breached its obligations to Transit in connection with its operation of the "fronting" program.

In July 1987, the Receiver settled all claims against DMT in the Texas action. The settlement agreement released DMT and all its officers, directors, and employees, two of whom included Bowie and Gregory. The settlement agreement, however, provided that the release did not "apply to any and all claims of the Receiver against any officers and directors of Transit who also serve or have served as officers, directors, or employees of [DMT]."

Shortly thereafter, the Receiver filed an action in the United States District Court for the Central District of California (the California action) naming former officers and directors of Transit, including Bowie and Gregory,[1] for alleged negligence and fiduciary breaches in connection with both the implementation of the Risk Management Plan and the supervision of the Managing General Agents. These acts and omissions were alleged to have cost Transit more than $156,000,000.

Bowie and Gregory sought defense and indemnification from the insurers with respect to the California action. After the demand was rejected, they filed this action in the Central District of California. The district court dismissed the suit finding Bowie and Gregory not insureds in their capacities as Transit directors. The dismissal, however, was without prejudice to the filing of a new suit in the event that the Transit Receiver named them as defendants in their role as DMT directors and the insurers persisted in refusing to defend.

## II.

### A.

Bowie and Gregory contend that, in dismissing their action for failure to state a claim, the district court erred in concluding

---

1. Bowie was named in his capacity as member of the Board of Directors, Chairman of the Board, Chief Executive Officer and Chief General Counsel. From June 1983–April 1985, he is alleged to have served as President. Gregory was named in his capacity as member of the Board of Directors. He was Vice–Chairman from October 1984–July 1985. The California action did not name Bowie and Gregory in their capacities as officials of DMT.

that they were not insureds under the relevant DMT insurance policies. The policies, themselves, defined the "Insured" thusly:

The unqualified word "Insured" whenever used means:

1) The Named Insured herein defined as the individual, partnership, or corporation designated as such in the Declarations.

2) *any* partner, officer, *director,* stockholder or employee *while acting within the scope of their duties as such*
. . . .

(emphasis added). Bowie and Gregory reason that they were, by virtue of the above-quoted language, insureds. Thus, they frame the issue not as "one of whether [they] are 'Insureds' but one of whether as 'Insureds' their activities fall outside the scope of coverage based upon exclusions contained in the policy...." Specifically, they cite the following exclusion:

This policy does not apply:

. . . . .

(d) to any claim arising out of any Insured's activities as an officer or director of any ... corporation, company or business other than that of the Named Insured.

On the other hand, the insurers contend that Bowie and Gregory simply are not insureds for purposes of the California action because they are named in that suit *only* in their capacities as Transit directors. Thus, they read the basic policy coverage as the mechanism which prevents Bowie and Gregory from maintaining a claim for indemnification and defense, while Bowie and Gregory see the exclusions as potentially operative.[2]

In deciding that Bowie and Gregory were not insureds for the purpose of requiring the insurers to defend the California action, the district court took judicial notice of that suit and found the complaint in the California action devoid of any attempt to name Bowie and Gregory as DMT officials. Bowie and Gregory contend that, by rely-

ing on the complaint in the California action, the court violated California law which does not define an insurer's duty to defend strictly by the language of third-party pleadings.

**B.**

■ Bowie and Gregory correctly note that under California law an insurer's duty to defend is not judged solely by the allegations of a third-party complaint, but rather an insurer must defend any suit in which the claim alleged is potentially within the coverage of the policy. In the seminal case of *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 112, 419 P.2d 168, 176 (1966), the California Supreme Court expanded the insurer's duty to defend. Rather than relying solely on the allegations of the underlying complaint the court looked to the facts which an insurer "learns from the complaint, the insured, or other sources." *Id.* at 276, 54 Cal.Rptr. at 113, 419 P.2d at 177.

·In *Gray,* Jones sued Gray for "wilfully, maliciously, brutally, and intentionally" assaulting him. Gray contended that he acted in self-defense and demanded defense and indemnification from the insurer. Based upon an exclusionary clause covering intentional torts, the insurer denied coverage and Gray sued. The court found the suit to be one seeking damages potentially within the policy's coverage. Although the suit alleged intentional conduct, it could have been decided under a negligence theory, thereby bringing it within the policy's coverage. Noting that because the "complainant in the third party action drafts his complaint in the broadest terms[,] he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct[,]" the court concluded that, in light of the flexibility of modern pleadings, the third party should not be designated the "arbiter of the policy's cov-

---

**2.** This is more than 'a battle of semantics' as "exceptions and exclusions in an insurance policy are construed liberally in favor of the insured...." *Mullen v. Glens Falls Ins. Co.,* 73 Cal.App.3d 163, 171, 140 Cal.Rptr. 605, 610 (1977) (citing *Continental Cas. Co. v. Phoenix Constr. Co.,* 46 Cal.2d 423, 437–38, 296 P.2d 801, 809–10 (1956)).

erage." *Id.* at 276, 54 Cal.Rptr. at 112, 419 P.2d at 176.

*Gray* involved an ambiguous policy exclusion which sought to limit a clear coverage provision. The very first paragraph as to coverage in the policy at issue in *Gray* provided that "the company shall defend any suit against the insured alleging such bodily injur[ies]. . . ." The Court concluded that "[t]his language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause." *Id.* at 273, 54 Cal.Rptr. at 110, 419 P.2d at 174 (emphasis in original). The Court then proceeded to find unclear the exclusionary clause's relationship to the general coverage provision. *Id.*

### C.

■ In this diversity suit we are bound by the principles of *Gray,* but we cannot agree with the attempted extension of these principles, as urged by Bowie and Gregory. They rely on *dicta* in *Gray* to the effect that the insurer was alternatively liable because, although the complaint sought relief only on the basis of uninsured conduct, it was subject to amendment to add insured (negligent) conduct. *Gray,* 65 Cal.2d at 277, 54 Cal.Rptr. at 113, 419 P.2d at 177. Thus, they imply that, even though the complaint in the California action does not name any parties in their insured capacities, it could be amended to do so.

The phrase "duty to defend" presupposes the existence of a lawsuit against an "insured," requiring a defense under the policy. Here, that supposition simply does not apply. The insurers have not unqualifiedly covered Bowie and Gregory, but rather only have covered them in their capacities as DMT officials. *See supra* at 707 ("Insured" includes "any partner, officer, director, stockholder or employee of [DMT] *while acting in the scope of their duties as such.*") (emphasis added). The California action names them as defendants only in their capacities as Transit officials. The mere fact that Bowie and Gregory are named in the California action is not controlling. The directors of Transit and the directors of DMT may as well have been completely different people. What is important is not their identities but their capacities. Here the insured capacities are not implicated in the California action. Because there is no lawsuit against an insured party, there is no one to whom a duty to defend is owed.

*Gray* recognized an important limitation upon the duty to defend: the nature and kind of risk covered. Thus, had Bowie and Gregory caused an automobile collision unrelated to their scope of employment duties, no one would expect that the insurers, who promised to cover DMT and its employees for errors and omissions undertaken in the course of their employment, to indemnify or defend them. Presumably, they would have had a different sort of insurance policy to cover that type of risk, or else assumed that risk themselves. Similarly, here, covering Bowie and Gregory for errors and omissions committed as Transit officials is not the nature or kind of risk which the Home and New England policies assumed.

While we find no case exactly on point, *Fire Ins. Co. v. Jiminez,* 184 Cal.App.3d 437, 229 Cal.Rptr. 83 (1986), helps to illustrate by analogy. Jiminez owned two parcels of land. One was a residential lot, the other, a commercial one. Jiminez bought a "Dwelling Package Policy" from the insurer which listed the residential lot as the "Location of Property Insured." The commercial lot was not an insured property under the policy. While salvaging roofing material on Jiminez's commercial lot, Metzger was injured and sued Jiminez. The insurer refused to defend.

The Superior Court found a duty to defend but the Court of Appeal reversed, finding no such duty because there was no "potential for liability" by virtue of a theoretical amendment as the uncontradicted evidence showed that Metzger was injured at the uninsured property. *Id.* at 442, 229 Cal.Rptr. at 86. This makes perfect sense. "'It would be unreasonable to allow an insured to expand that coverage [and duty to defend] to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the

company...'" *Id.*, 229 Cal.Rptr. at 85–86 (citing *Safeco Ins. Co. of Am. v. Hale*, 140 Cal.App.3d 347, 353–354, 189 Cal.Rptr. 463, 466 (1983)). Jiminez was sued in his capacity as owner of the commercial lot, but insured in his capacity as owner of the residential lot. Similarly Bowie and Gregory were sued in their capacities as officers of Transit, but insured in their capacities as officers of DMT. *Jiminez* thus strongly supports the district court's holding that at this time the insurer has no duty to defend them.

Bowie and Gregory rely on references in *Gray* and cases decided thereafter for the proposition that a "potential for liability under the policy" exists whenever the complaint can theoretically be amended to add allegations of conduct covered by the policy. *See, e.g., CNA Casualty of Cal. v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 610–11, 222 Cal.Rptr. 276, 282–83 (1986). We agree that some cases so hold. But we read them to mean that, once an insured is sued, an insurer who learns of potential liability of its insured is obligated to defend even claims not covered by the policy so long as conduct, the nature and kind of which ordinarily would be covered, has occurred so that the complaint conceivably could be amended to allege covered conduct. *See* Revere & Chapman, *Insurer's Duty to Defend*, 13 Pac.L.J. 889, 894 (1982). This rule, preventing the obligation of an insurer from being predicated on the precise wording of a third-party complaint, is meant to avoid creating an "anomaly for the insured." *Gray*, 65 Cal.2d at 276, 54 Cal.Rptr. at 112, 419 P.2d at 176. For

example, a third party, to avoid bringing an insurer, with its attendant resources, into the action, might draft a complaint to allege damages uncovered by the policy. *See* Comment, *Termination of the Duty to Defend*, 17 Pac.L.J. 283, 291 (1985).

While the courts have found a "potential for liability" (for purposes of the duty to defend) where a complaint could be theoretically amended to allege, against an insured already named as a defendant in the suit, claims covered under the policy, no California court has extended that rule to one not sued in an insured capacity. In other words, no court has said that an insurer must defend an insured *not yet named* in an insured capacity as a defendant in a suit, even though a complaint could be so amended.[3]

Bowie and Gregory have not been named in the California action as officials of DMT. The Bowie and Gregory who are DMT officials have nothing to do with the Bowie and Gregory named (as Transit directors) in that action. Nonetheless, they attempt to parlay their dual capacities into a free defense of claims for astronomical damages against officials of a company not insured by their insurers. California law neither requires such a result, nor permits it.[4]

### III.

The difference between this case and Gray and its progeny is clear. In *Gray*-like cases, damage of the type covered by the policy—e.g., bodily injury—occurs as the result of an insured's actions, and the insurer typically relies on an ambiguous ex-

---

**3.** Of course, if the facts discovered indicate that the complaint was really intended to sue the defendants in their insured capacities, but by inadvertence referred to them in uninsured capacities, a different result might ensue. Here, however, there is no indication that the Receiver's suit against Bowie and Gregory, solely as directors of Transit, was due to inadvertence. Indeed, every reasonable inference is that the Receiver knew quite a lot about DMT's involvement in these matters. *See infra* note 4.

**4.** There would, of course, be a duty to defend if Bowie and Gregory were sued in their capacities as officials of DMT. Such an eventuality, however, seems improbable. Although we find it

unnecessary to decide, it is likely that the settlement of the Texas action encompassed any claims against Bowie and Gregory as DMT officials. While the reservation in the release, could be construed as ambiguous, it probably was intended merely to reserve any claims against Transit directors (in their capacities as such) notwithstanding their release in their DMT capacities. This construction reconciles the broad terms of the release with the limited exclusion. Moreover, if the Receiver bargained for a reservation in the release in order to keep Bowie and Gregory liable for their acts and omissions as DMT officials, he would have in all likelihood designated them in the California action.

clusionary clause to avoid obligation. Here, on the other hand, the threshold question concerns the scope of the basic coverage. Bowie and Gregory are simply not insureds. *See Giddings v. Indus. Indem. Co.*, 112 Cal.App.3d 213, 218, 169 Cal.Rptr. 278, 280 (1980).

The district court properly dismissed for failure to state a claim the action against the insurers for breach of the duty to defend. We AFFIRM.