Filed 9/26/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAUL TERRELL et al., <br><br>    Plaintiffs and Appellants, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, <br><br>    Defendant and Respondent. | A152541 <br><br> (San Francisco County <br> Super. Ct. No. CGC-16-551994) |

Appellants Paul Terrell and Rica Tseng had been renting their San Francisco home to tenants for eight years when the front porch collapsed, causing injury to a tenant. When the tenants sued, appellants sought defense and indemnification from their insurance provider, respondent State Farm General Insurance Company (State Farm). State Farm denied their claim, however, because appellants' homeowners insurance policy excluded coverage for injuries arising out of an insured's business pursuits or the rental of their home. Appellants sued State Farm for breach of contract and bad faith denial of their insurance claim. They appeal from the grant of summary judgment in favor of State Farm, contending that coverage should be restored under an exception for activities that are "ordinarily incident to non-business pursuits." We conclude that summary judgment was appropriately granted on this record and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. Appellants purchased a San Francisco property in 2000 (Property). They initially lived at the Property and obtained a homeowners insurance policy from State Farm. Appellants moved out and began renting

the Property in 2003. They contacted their State Farm agent to inquire about appropriate insurance coverage for the Property. At their direction, State Farm cancelled and replaced the homeowners policy with a rental dwelling policy in January 2004. In the winter of 2004, appellants discussed moving back to the Property and asked State Farm to change their coverage. State Farm cancelled the rental dwelling policy in January 2005 and replaced it with the homeowners policy at issue in these proceedings. Appellants, however, did not move back into the Property. Instead, their existing tenants remained in the rental home until May 2006. When those tenants moved out, appellants advertised the Property for rent and signed a lease in June or July 2006 with a new tenant, Pamela Fitzgerald. The lease set the rent at $2,100 per month and identified Pamela and her then minor daughter, Mary Fitzgerald, as the occupants.

Eight years later, the porch area in front of the Property's front door collapsed. Mary, who was standing on the porch at the time, fell through a hole and sustained injuries from the fall. Appellant Paul Terrell contacted State Farm to report the collapse of the front porch area and possible injury to one of the tenants. The State Farm claim representative verified that appellants had been renting out the Property since 2003, but noted that appellants did not have a rental dwelling policy. Mr. Terrell acknowledged that they should have contacted their State Farm agent but did not do so because they thought their situation was temporary and they would move back to the Property.

In April 2014, the Fitzgeralds sued appellants, alleging " 'claims for damages, including bodily injury, against [appellants] arising out of their ownership and maintenance of the home rented to Pamela.' " The complaint set forth causes of action for negligence, premises liability, breach of the lease agreement, and breach of the implied warranty of habitability, among other claims. The gravamen of their complaint was that the Property "suffered from numerous uninhabitable conditions" which appellants failed to repair, appellants "failed to . . . inspect and maintain the landing throughout their tenancy," and appellants failed to notify them of the dangerous condition or otherwise protect them against the risk of harm.

State Farm reviewed a copy of the Fitzgeralds' complaint and concluded the suit did not seek to recover damages potentially covered by appellants' homeowners policy. In a letter to appellants denying coverage and declining to provide a defense,[1] State Farm explained that the lawsuit's claims all arose out of appellants' rental of the Property and "[t]here are no claims for damages that do not arise out of the landlord/tenant relationship as set forth in the lease agreement." Citing several exclusions from coverage contained in the policy, including the provision that excludes insurance coverage "for bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by the insured," State Farm maintained it owed no duty to defend appellants in the underlying action.

Appellants settled the Fitzgerald lawsuit for $43,000. Appellants' attorney then contacted State Farm to request reconsideration of their denied claim. Appellants asserted that the rental exclusion in the policy was itself subject to an exception for " 'activities which are ordinarily incident to non-business pursuits' " and therefore State Farm had wrongfully refused to defend and indemnify them. State Farm reaffirmed its denial of appellants' claim, concluding the "ordinarily incident" exception did not apply to their circumstances. Over the course of these communications, appellants returned in August 2015 to live in the Property.

Appellants sued State Farm in May 2016, asserting causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The complaint alleged that State Farm wrongfully failed to conduct a full investigation into their claims and unreasonably denied them defense and indemnity. State Farm moved for summary judgment, arguing that it had no duty to indemnify or defend appellants because the damages sought in the Fitzgerald lawsuit arose solely from appellants' excluded business pursuits/rental activity, the "ordinarily incident to non-business pursuits" exception did not apply to restore coverage, and the policy's "insured location" exclusion

---

[1] State Farm did issue a payment of $12,605.13 to appellants to cover property damage stemming from the April 1, 2014 porch collapse.

separately barred coverage because the Property did not qualify as appellants' "residence premises." Appellants argued in opposition that their Property maintenance activities were ordinarily incident to nonbusiness pursuits, State Farm waived the "insured location" exclusion when it paid appellants' property damage claim, and material factual disputes existed with respect to State Farm's bad faith in failing to defend and indemnify.

After a hearing on June 23, 2017, the trial court granted State Farm's summary judgment motion. The trial court construed the business pursuits/rental exclusion in the policy as having two separate exclusions—one applying to "business pursuits" and the other applying to "rental" activities. It concluded that "the exception for 'activities which are ordinarily incident to non-business pursuits' does not apply where the rental exclusion bars coverage." Since the Fitzgerald lawsuit arose out of the rental of the Property and was excluded from coverage under the homeowners policy, State Farm owed no duty to defend or indemnify appellants. Summary judgment was entered with respect to both the breach of contract and bad faith causes of action.

## II. DISCUSSION

### A. *Standards of Review and Rules of Interpretation for Insurance Contracts*

"The standards for granting summary judgment are well settled and easily delineated. A trial court must grant a motion for summary judgment 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc, § 437c, subd. (c).) When . . . defendants move for summary judgment, they can 'meet their burden by demonstrating that "a cause of action has no merit," which they can do by showing that "[o]ne or more elements of the cause of action cannot be separately established . . . ." ' " (*In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 150 (*Automobile Antitrust*); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "If the defendant meets this requirement, the burden shifts to the plaintiff to demonstrate a triable issue of material fact exists." (*We Do Graphics, Inc. v. Mercury Casualty Co.* (2004) 124 Cal.App.4th 131, 135 (*We Do Graphics*).)

4

We review an order granting summary judgment de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) Interpretation of an insurance policy to determine whether it provides a potential for coverage is a question of law reviewed de novo. (*Powerline Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 (*Powerline*).) An " 'insurer is entitled to summary adjudication that no potential for indemnity exists . . . if the evidence establishes as a matter of law that there is no coverage.' " (*Ibid.*) Stated another way, " '[w]e apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' " (*Ibid.*)

Settled rules govern the interpretation of insurance contracts. (*Powerline*, *supra*, 37 Cal.4th at p. 390.) "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 (*Bank of the West*).) "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." (*Ibid.*) "Such intent is to be inferred, if possible, solely from the written provisions of the contract." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.) "If contractual language is clear and explicit, it governs." (*Bank of the West*, at p. 1264, citing Civ. Code, § 1638.) Insurance provisions should be interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644; see *AIU*, at p. 822 ["if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning"].)

" 'A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.' [Citations.] The fact that a term is not defined in the policies does not make it ambiguous. [Citations.] Nor does '[d]isagreement concerning the meaning of a phrase,' or ' "the fact that a word or phrase isolated from its context is susceptible of more than one meaning." ' [Citation.] ' "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the

5

abstract." ' [Citation.] 'If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.' " (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 (*Foster-Gardner*); see *Bank of the West*, *supra*, 2 Cal.4th at p. 1265 [a promise of coverage in an insurance policy protects only " 'the objectively reasonable expectations of the insured' "].) With these considerations in mind, we turn to the disputed policy provisions in this case.

## B.     *Business Pursuits/Rental Exclusion from Coverage*

The homeowners policy at issue provides personal liability coverage (Coverage L) "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies" and agrees to provide a defense and "pay up to our limit of liability for the damages for which the insured is legally liable." (Bolding omitted.) Where, as here, the policy obligates the insurer to pay all sums up to its limit for which the named insured becomes legally liable because of bodily injury or property damage to which coverage is extended, and "contains no other provision describing what coverage is provided, the insurer is liable for any accident for which the insured may be legally liable unless coverage is expressly excluded." (*Morris v. Atlas Assurance Co.* (1984) 158 Cal.App.3d 8, 13 (*Morris*).)

Expressly excluded from Coverage L is coverage for "bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured." (Bolding omitted.) The business pursuits/rental exclusion contains several exceptions, including the "ordinarily incident" exception invoked by appellants. The business pursuits/rental exclusion and its exceptions under the policy state in relevant part:

1. Coverage L and Coverage M do not apply to:

"[¶] . . . [¶]

b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of

6

any part of any premises by any insured.  This exclusion does not apply:

> (1) to activities which are ordinarily incident to non-business pursuits;
>
> [¶] . . . [¶]
>
> (3) to the rental or holding for rental of a residence of yours:
>
>> (a) on an occasional basis for the exclusive use of a residence;
>>
>> (b) in part, unless intended for use as a residence by more than two roomers or boarders; or
>>
>> (c) in part, as an office, school, studio or private garage."  (Bolding omitted.)

Exclusionary clauses in insurance contracts must be " 'conspicuous, plain, and clear.' " (*Gray v. Zurich Insurance Co*. (1966) 65 Cal.2d 263, 273).  California courts have routinely found similarly worded exclusions for business pursuits sufficiently clear to meet this standard.  (See *Crane v. State Farm Fire & Casualty Co.* (1971) 5 Cal.3d 112, 115, 117 (*Crane*) [business pursuits exclusion was "unequivocal"]; *Fire Ins. Exch. v. Jiminez* (1986) 184 Cal.App.3d 437, 443 (*Jiminez*) [business pursuits exclusion was " ' "conspicuous, plain and clear" ' "]; *Morris*, *supra*, 158 Cal.App.3d at pp. 14–15 [business pursuits exclusion was "clear and unambiguous"].)

We have no difficulty in concluding that the business pursuits/rental exclusion in the homeowners policy at issue here is clear and unambiguous.  The policy defines a "business" as "a trade, profession or occupation."  A "business pursuit" is commonly understood as "a regular activity engaged in for the purpose of earning a profit" and may include "part-time or supplemental income" activities.  (*State Farm Fire & Casualty v. Drasin* (1984) 152 Cal.App.3d 864, 870; see Rev. & Tax Code, § 6013 [defining "business" as "any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect."].)  While the term "rental" is not defined in the policy, this does not render the provision ambiguous.

7

(*Foster-Gardner*, *supra*, 18 Cal.4th at p. 868.) A "rental or holding for rental" in this context means "[s]omething (as a property, business premises, car, etc.) that is let out for rent." (Oxford Eng. Dict. Online <www.oed.com/view/Entry/162532> (as of Sept. 26, 2019); see Webster's 3d New Internat. Dict. (2002) p. 1923 [rent means "a piece of property that the owner allows another to use in exchange for a payment in services, kind, or money: a rented property; especially: an apartment or house that rents"].)

Construing the above policy language under its usual and ordinary meaning, it is clear that appellants' rental of the Property to the Fitzgeralds constituted an excluded activity under both the business pursuits and rental of the premises clauses. Appellants signed a written lease with the Fitzgeralds granting them exclusive use and occupancy of the Property, and in exchange received monthly payments of $2,100. Appellants' income-generating rental activity was not an occasional one: the Fitzgeralds' tenancy lasted from 2006 through 2014, and was preceded by another paying tenancy that dated from 2003 to 2006. In between these two tenancies appellants held the Property out for rent to other prospective lessees through posted signs and online advertisements. That appellants believed their rental of the Property would only be temporary is of no moment. They were engaged in a regular business activity that generated substantial income over an extended period of time and under written lease terms that would be commonly understand as a property rental.

Moreover, the parties do not dispute that the bodily injuries sustained by Mary Fitzgerald from the collapse of the front porch arose solely out of appellants' excluded rental of their home. In California, residential landlords bear a primary responsibility to maintain leased premises in a safe, clean, and habitable condition throughout the term of the lease in addition to other obligations that may derive under contract. (See *Green v. Superior Court* (1974) 10 Cal.3d 616, 619 [recognizing an implied warranty of habitability for residential leases]; Civ. Code. § 1941.) The injuries occurred during and as a result of the Fitzgeralds' tenancy, and the Fitzgerald lawsuit was predicated upon appellants' status as landlords and their failure to maintain the Property in a safe and habitable condition. Accordingly, unless coverage is restored under an applicable

exception, we conclude as a matter of policy interpretation that the business pursuits/rental exclusion bars coverage of any claim arising from the Fitzgerald lawsuit.

## C.  *Ordinarily Incident Exception*

Appellants appear to concede that the business pursuits/rental exclusion applies to their rental activity, arguing instead that coverage should be restored under the "ordinarily incident" exception to the exclusion. They rely on the following policy provision:  "[T]his exclusion does not apply [¶] . . . to activities which are ordinarily incident to non-business pursuits."  (Bolding omitted.)  Appellants do not dispute that any alleged liability in the Fitzgerald lawsuit arose out of their maintenance of the Property's front porch.  They claim, however, that in their capacity as homeowners, they would have maintained the front porch whether they were living at the Property or renting it to others.  Thus, they argue, maintaining the porch was an activity ordinarily incident to nonbusiness pursuits (i.e., home ownership) and the ordinarily incident exception to the exclusion should apply to provide coverage under the policy.  We are not persuaded.

While California precedent interpreting an "ordinarily incident" exception in a homeowners insurance policy is scarce, courts in other jurisdictions have identified certain factors relevant to distinguishing business from nonbusiness pursuits.  (See *Towns v. Northern Sec. Ins. Co.* (Vt. 2008) 964 A.2d 1150, 1154–1155 (*Towns*) [collecting cases]; 9A Couch on Insurance (3d ed. 2019) § 128:25 Activities Usual to Nonbusiness Pursuits.)  For example, the ordinarily incident exception has been applied to afford coverage under an insurance policy where the acts or omissions alleged to have caused the injury did not "contribute to or further the interest of the insured's business" and were not "directly related to that business."  (*Vermont Mut. Ins. Co. v. Gambell* (*Gambell*) (Vt. 1997) 689 A.2d 453, 454; see *State Farm Fire & Cas. Co. v. Moore* (Ill.Ct.App. 1981) 430 N.E.2d 641, 645 ["If an activity is not done for the purpose of expediting the insured's business . . . it is within the exception."].)  Other courts have examined whether the activity giving rise to liability is "reasonably necessary in the carrying on of the business."  (*Fire Ins. Exchange v. Alsop* (Utah 1985) 709 P.2d 389, 391 [applying the business pursuits exclusion under such circumstances]; see *Blue Ridge Ins. Co. v.*

9

*Newman* (La. 1984) 453 So.2d 554, 556 (*Blue Ridge*) [business pursuits exclusion did not apply where the activity "was not directly related to the renting of the house and was not a necessary incident of the business of renting property"].) Under these authorities, an act giving rise to liability falls within the business pursuits exclusion—but not the ordinarily incident exception—where that act is directly related to that business and " 'contributes to, or furthers the interest of, the business.' " (*United States. Fire Ins. Co. v. Reynolds* (Ark.Ct.App. 1984) 667 S.W.2d 664, 666 (*Reynolds*).)

 *Jiminez*, *supra*, 184 Cal.App.3d 437 provides support for this approach. Jiminez was insured for personal liability under his homeowners policy but had not told his insurance agent he also owned a commercial property and had not listed that property on his policy. Jiminez removed a lean-to type roof connected to his commercial building and gave someone permission to salvage material from the roof. That party was injured while doing so and sued Jiminez. (*Id.* at pp. 439–440.) Jiminez looked to his homeowners policy for defense and indemnification. However, the policy contained an exception which excluded from coverage " 'bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits.' " (*Id.* at p. 440.) The appellate court rejected Jiminez's argument that his removal of the lean-to roof was a nonbusiness pursuit because it was a one-time decision to eliminate a nuisance from his commercial property. (*Id.* at pp. 442–443.) The court reasoned that the presence of a profit motive carries " 'considerable weight' " in determining the applicability of the business pursuits exclusion. (*Ibid.*) Since "[d]emolition of the nuisance would enhance the value of the property," the court deemed it a business pursuit. (*Id.* at p. 442.) The insurer thus had no duty to indemnify or defend. (*Id.* at p. 443.)

 Under these general standards, it cannot seriously be argued that appellants' maintenance of the front porch of the Property falls within an exception for "activities which are ordinarily incident to non-business pursuits." The undisputed facts show that appellants had been engaged in the business of renting the Property consistently for over a decade and were being paid to keep the Property in a habitable condition for their

existing tenants at the time of the accident. Any maintenance activities undertaken by appellants with respect to the Property were directly related to their rental of the premises and would have contributed to, and furthered the interests of, their rental business, (*Gambell*, *supra*, 689 A.2d at p. 454), or enhanced the value of the rental property. (*Jiminez, supra*, 184 Cal.App.3d at p. 442). Moreover, as landlords required to maintain the leased premises in a safe and habitable condition, repairs and upkeep of the front porch were a "necessary incident of the business of renting property." (*Blue Ridge*, *supra*, 453 So.2d at p. 556).

Plaintiffs rely on *Crane*, *supra*, 5 Cal.3d 112 but we find it materially distinguishable. *Crane* involved a woman who was caring for her own children while simultaneously providing paid childcare in her home. After one of her paid charges was burned, her insurer refused to cover the resulting medical bills, claiming that paid in-home childcare was a business pursuit and thus excluded under the policy. (*Id*. at pp. 114–115.) The Supreme Court concluded that even if in-home babysitting was a business pursuit, coverage was still applicable because the mother was providing lunch for her own children as well as her paid charge at the time of the injury and was thus engaged in duties "clearly incident" to her "nonbusiness regimen of maintaining a household and supervising her own children." (*Id*. at p. 117.) Central to the court's reasoning was that the insured was "acting simultaneously in a business and nonbusiness capacity and the accident occur[ed] during the course of carrying out this dual role." (*Id.* at p. 118.)

The circumstances here are markedly different. Appellants engaged in a for-profit rental of the Property for more than a decade, living elsewhere the entire time, and they fail to demonstrate what "nonbusiness regimen" they were engaged in simultaneous to their business pursuit. Their argument might be closer to the mark had appellants only occasionally rented to others or lived alongside the Fitzgeralds, simultaneously serving as landlords and co-residents of the Property. Furthermore, the *Crane* court was concerned with denying coverage in the particular context of in-home childcare, declaring: "[I]t is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children." (*Crane*, *supra*, 5 Cal.3d at p. 117.) The rental pursuits at

11

issue in these proceedings, in contrast, have a distinctly commercial flavor, more akin to *Jimenez* than *Crane*.

Policy reasons also counsel against adopting plaintiffs' interpretation of the ordinarily incident exception under the circumstances presented here. As the Louisiana Supreme Court observed, "[t]he apparent purpose of the 'business pursuits' exclusion from personal liability coverage in a homeowner's policy is to eliminate the high cost of insuring the risks attendant to commercial enterprises, thereby making homeowner's insurance available at lower rates." (*Blue Ridge*, *supra*, 453 So.2d at p. 556.) The court further noted that "[t]here is obviously a lower risk in insuring a building used as a residence than one used for business purposes. This consideration is also reflected in (1) the exception to the business pursuits exclusion, which excepts activities ordinarily incident to nonbusiness pursuits, and (2) the exclusions from the policy definition of business, which exclude occasional rental as well as the rental of a portion of a building used primarily as a residence." (*Ibid.*; see *Smith v. State Farm Fire & Cas. Co.* (Minn.Ct.App. 2003) 656 N.W.2d 432, 437 [explaining that the business-pursuits exclusion omits coverage that is not essential to homeowners to keep premiums at a reasonable level].) Appellants seek to fold into a homeowners policy coverage for the commercial risks attendant to renting their home as a for-profit venture. There is a separate policy tailored to those business risks, a rental dwelling policy, that appellants eschewed in favor of a cheaper policy. Appellants' argument, if accepted, would upend the allocation of risks and costs associated with commercial or personal activities that insurers rely upon to keep homeowners' premiums lower than that of business enterprises.

Since the undisputed evidence establishes as a matter of law that there is no coverage under the business pursuits/rental exclusion, and thus no potential for indemnity exists, summary judgment was appropriate as to both appellants' breach of contract and

12

bad faith claims.[2]  (See *Powerline*, *supra*, 37 Cal.4th at p. 390 [" 'The insurer is entitled to summary adjudication that no potential for indemnity exists . . . if the evidence establishes as a matter of law that there is no coverage.' "]; *We Do Graphics*, *supra*, 124 Cal.App.4th at p. 136 ["Where the policy language clearly provides no basis for coverage . . . there is no duty to defend because there can be no reasonable expectation of a defense."]; see also *1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.* (2006) 135 Cal.App.4th 1008, 1021 ["As [the insured] could state no cause of action for breach of contract, it could not assert a claim for bad faith."].)  In the end, we must agree with State Farm's characterization of this case:  "Appellants were not entitled to the insurance benefits they wanted, for the simple reason that they failed to buy the insurance policy they needed."

### III.    DISPOSITION

The judgment is affirmed.  State Farm is entitled to its costs on appeal.

---

[2] As discussed above, the trial court opined that "the exception for 'activities which are ordinarily incident to non-business pursuits' does not apply where the rental exclusion bars coverage."  Because we conclude that the ordinarily incident exception is not applicable on these facts, we need not reach this question.  (See *Automobile Antitrust*, *supra*, 1 Cal.App.5th at p. 150 ["the trial court's stated reasons for granting summary judgment 'are not binding on us because we review its ruling, not its rationale' "].)  Similarly, we need not consider State Farm's alternate argument that the "insured location" exclusion also bars coverage.

_____
Sanchez, J.

WE CONCUR:


_____
Humes, P. J.


_____
Margulies, J.

Trial Court:            San Francisco County Superior Court

Trial Judge:            Hon. Richard B. Ulmer

Counsel:

Emergent LLP, Peter Roldan, for Plaintiffs and Appellants

Pacific Law Partners, LLP, Sandra E. Stone, Jenny J. Chu, for Defendant and Respondent