STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-07-178


JAMIE M. JACKSON,

            Plaintiff,

      v.

NORTH EAST INSURANCE                              **ORDER**
COMPANY,

            Defendant


      Plaintiff Jamie Jackson's Motion for Partial Summary Judgment is before

the Court, as is defendant North East Insurance Co.'s Motion for Summary

Judgment. Jackson contends that North East Insurance Co. breached its duty to

defend him in a personal injury action brought by Robert Duggan, and the only

issue left to be determined is the measure of damages. North East Insurance Co.

argues that it did not have a duty to provide Jackson with legal defense.

Jackson's Motion is granted and North East Insurance Co.'s Motion is denied.


## BACKGROUND

      In July 2003, Colonial Auto Sales (Colonial) was the named insured under

a commercial garage policy (the "Policy") issued by defendant North East

Insurance Co. (Defendant). The Policy provided defense and indemnification for

"all sums an 'insured' legally must pay as damages because of 'bodily injury' . . .

to which this insurance applies, caused by an 'accident' and resulting from

1

'garage operations' involving the . . . use of covered 'autos'." Colonial's Policy covered "any '[a]uto,'" and identified as "insured" Colonial and "[a]nyone else while using with [Colonial's] permission a covered 'auto' [Colonial] own[s], hire[s] or borrow[s] . . . ." The Policy defines "garage operations" as including the "use of . . . covered 'autos.'"

On July 11, 2003, plaintiff Jamie Jackson (Plaintiff) was employed as Colonial's service writer. That evening Plaintiff and Robert Duggan entered Colonial's showroom and took two motorcycles from the sales floor without permission. The two men drove the motorcycles to multiple bars and became intoxicated. Still on the motorcycles, in the early hours of July 12, 2003 the men drove by a friend's home. Plaintiff turned to enter the friend's driveway, but in doing so he passed in front of Duggan. Duggan did not turn, but instead drove straight into Plaintiff causing a t-bone collision. Both men were seriously injured in the accident.

Shortly after the accident Plaintiff was fired from his employment with Colonial, and he signed a release of claims against Colonial. The release did not include Defendant. Duggan served Colonial with a Notice of Claim by a letter dated September 16, 2003, which Colonial forwarded to Defendant with another letter dated September 18, 2003. Defendant acknowledged that it was aware of Duggan's potential claims by letters dated September 24, 2003, and contacted Duggan's attorney via a letter dated October 1, 2003. Defendant did in fact proceed to conduct a full investigation of the accident.

Duggan filed a complaint against Plaintiff on September 24, 2004 alleging that on July 12, 2003 Plaintiff was riding a motorcycle and he negligently collided with Duggan, causing Duggan's injuries. The complaint did not reference

2

Colonial or any of the events leading up to the accident. Plaintiff was aware of the suit's existence, but he did not take any action in his own defense or otherwise request legal assistance from Defendant.

In a letter dated December 14, 2004, Duggan's attorney notified Defendant that Plaintiff had been served with the complaint on October 16, 2004, no answer had been filed, "and default judgment [had] been answered." The letter was accompanied by a scheduling order. Defendant received this letter on January 7, 2005. By letter dated April 8, 2005, Defendant's counsel informed Duggan's counsel that "[Defendant] provides no insurance coverage to [Plaintiff] in connection with the subject matter of your lawsuit." Finally, in a letter dated August 8, 2005, Duggan's counsel informed Defendant that a damages hearing had been scheduled for August 11, 2005.

At the August 11 damages hearing a final judgment was entered against Plaintiff in the amount of $1,754,000. Plaintiff appeared at the hearing, but did not speak in his own defense. Before the hearing, Mark Flanagan, owner of Colonial, and Tom Wilson, Colonial's counsel, spoke with Plaintiff and "offered to be there on the day of." It is not clear if Flanagan or Wilson actually attended the hearing. During the Duggan proceedings Defendant did not bring a declaratory action to clarify its relationship with Plaintiff.

On March 30, 2007 Plaintiff filed this action against Defendant claiming that Defendant breached its duty to defend Plaintiff against Duggan, constituting a breach of contract and violation of 24-A M.R.S.A. § 2436-B. On June 5, 2007, Plaintiff filed its Motion for Partial Summary Judgment on the issue of whether Defendant breached its duty to defend. On January 9, 2009 Defendant filed its Motion for Summary Judgment in its favor.

3

## DISCUSSION

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655.

### 1. The Comparison Test

Defendant argues that it had no duty to defend Plaintiff because his conduct resulting in the accident of July 12, 2003 indisputably placed the event beyond the Policy's coverage. Plaintiff correctly counters that the extrinsic facts of the accident are irrelevant to whether Defendant had a duty to defend Plaintiff against Duggan.

The Supreme Judicial Court has often stated that "the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are." *Travelers Indemnity Co. v. Dingwell*, 414 A.2d 220, 224 (Me. 1980) (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage*, 373 A.2d 247, 249–50 (Me. 1977)). "If, comparing an insurance policy with an underlying complaint there is any legal or factual basis that could obligate an insurer to indemnify, then the insured is entitled to a defense." *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me. 1991) (quoting *State Mutual Ins. Co. v. Bragg*, 589 A.2d 35, 36 (Me. 1991)). "The insurer has a duty to defend if the complaint shows any potential that the facts ultimately proved may come within the scope of coverage provided under the policy." *Id.* (quoting *Lavoie v. Dorchester Mut. Fire Ins. Co.*, 560 A.2d 570, 571 (Me. 1989)). "Any doubt about the adequacy of the pleadings to bring the occurrence within the coverage of the

4

insurance policy should be resolved in favor of the insured." *J.A.J. Inc. v. Aetna Casualty & Surety Co.*, 529 A.2d 806, 808 (Me. 1987) (citing 7C Appleman, Insurance Law and Practice § 4683 (1979)). This broad construction of the duty to defend ensures that an insured receives its contractual benefit of defense without having to first prove the facts underlying the claim against which it wishes to be defended. *Dingwell*, 414 A.2d at 227; *accord Federated Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 668 N.E.2d 627 (Ill. App. Ct. 1996).

The Policy provided coverage for accidents caused by Colonial's employees during their permitted use of covered autos. Duggan's complaint alleged that Plaintiff negligently collided with Duggan while the two were riding motorcycles. The complaint is silent as to Plaintiff's employment status, the motorcycles' ownership, or the nature of their use at the time of the accident. Due to these ambiguities Duggan could possibly have proven that Plaintiff was Colonial's employee, the motorcycles were covered autos, and that they were being used with permission when the collision occurred. However unlikely this scenario may be, it would bring the accident within the Policy's coverage. As a consequence, Defendant did have a duty to defend Plaintiff against Duggan in Duggan's tort action.

Defendant argues that the complaint's ambiguity should foreclose, rather than create, the duty to defend. Relying on the Ninth Circuit case of *Bowie v. The Home Ins. Co.*, Defendant claims that it could not have been obliged to defend Plaintiff because Plaintiff is only contingently covered under Colonial's policy, and Duggan's complaint did not state any claim against Colonial. This argument is squarely contradicted by *Dingwell*, in which the Supreme Judicial Court stated that the insurer has a duty to defend "whenever the allegations show a potential

5

that liability will be established within the insurance coverage, even when the allegations are broad, and uncertain as to specific facts . . . 'even when the insurer has knowledge of facts to the contrary.'" 414 A.2d at 226–27 (quoting *Cumberland Cold Storage*, 373 A.2d at 250). Defendant's argument also misreads *Bowie*.

In *Bowie*, the two plaintiffs were former officers and directors of both the Transit Casualty Co. (Transit) and the DMT Financial Group (DMT). *Bowie v. The Home Ins. Co.*, 923 F.2d 705, 705 (9th Cir. 1991). The plaintiffs were insured expressly in their capacities as officers and directors of DMT. *Id.* at 708. They were named in a lawsuit exclusively in their capacities as officers and directors of Transit. *Id.* at 707. Based on the wording of the complaint, the courts concluded that there was no possible scenario under which the allegations against the officers and directors of Transit could give rise to a claim under DMT's insurance, so the insurer had no duty to defend. *Id.* at 708.

Defendant interprets *Bowie* to mean that a complaint must specifically allege that the individual being sued was acting on behalf of the primary insured to trigger coverage. It means no such thing. In fact, *Bowie* merely restates the rule of *Dingwell* and holds that the duty to defend is triggered if the complaint, *as it is written*, could give rise to a factual scenario implicating coverage. *See id.* at 709 (finding that potential for liability does not exist for purposes of the duty to defend "where a complaint could be theoretically amended to allege . . . claims covered under the policy").

Because Duggan's complaint could potentially have given rise to a claim covered by the Policy, Defendant had a duty to defend Plaintiff in Duggan's action.

2.     **Tender of Request for Defense**

Defendant next argues that even if it had a duty to defend Plaintiff under the comparison test, it is not liable now because Plaintiff never tendered a request for legal assistance. Maine has never expressly required an insured to actively request defense as a predicate to an insurer's obligation to defend, and has not addressed the question. However, Plaintiff offers an Illinois case directly on point. In *Federated Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, the Appellate Court of Illinois held that "an insurer's duty to defend claims potentially falling within the terms of a policy is triggered by actual notice of a lawsuit . . . ." 668 N.E.2d 627, 633 (Ill. App. Ct. 1996). The court found this rule would effectuate Illinois' public policy of ensuring that insured individuals receive their contractual benefit of defense. *Id.* Maine has similar public policy goals, and the Court finds *Federated Mutual*'s reasoning persuasive. *See Dingwell*, 414 A.2d at 227.

In this case, Defendant knew of Plaintiff's accident and knew that Duggan intended to bring a claim in October of 2003. Defendant performed its own investigation into the events, and learned of Duggan's complaint eight months before final judgment was entered in the case. Furthermore, Duggan's letters to Defendant were clearly interpreted as invitations to provide Plaintiff with defense, as evidenced by Defendant's explicit disclaimer of coverage in response. Given that it had notice of the accident and claim, Defendant should not be able to escape its duty to defend because Plaintiff himself did not request assistance.

### 3.    Adequate Notice

Defendant's final argument is that its failure to defend Plaintiff should be excused because Defendant received inadequate notice of Duggan's suit. Defendant claims that its obligations were discharged by Plaintiff's failure to

7

promptly notify Defendant of the accident as required under the policy. Defendant also protests that it did not learn of Duggan's actual complaint until January of 2005, after a default had been entered but before the final judgment. In Maine, an insurer may escape liability for its failure to defend if it can show "(a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay. Further, the burden of proof is on the insurer to demonstrate prejudice . . . [and] [i]n general, proof of prejudice to an insurer is a question of fact." *Ouellette v. Maine Bonding and Casualty Co.*, 495 A.2d 1232, 1235 (Me. 1985).

There is no question that Plaintiff himself did not provide Defendant with notice as required by the Policy. The question thus becomes whether Defendant was prejudiced. The record shows that, as a matter of law, Plaintiff's breach of the Policy's notice provision did not unduly prejudice Defendant. "The purpose of a notice provision in an insurance policy is to allow the insurer an opportunity to investigate the circumstances surrounding an accident giving rise to a claim reasonably soon after the accident has occurred." *Ouellette*, 495 A.2d at 1234 (quoting the Superior Court Justice below). In this case Defendant learned of the accident two months after it happened and was able to conduct a full investigation. Defendant does not allege that the delay impeded its investigation, prevented it from obtaining evidence, or precluded it from asserting material defenses on the insured's behalf.

Defendant does argue that it was prejudiced by its late discovery of Duggan's complaint, but the Supreme Judicial Court addressed this issue in *Michaud v. The Mutual Fire, Marine & Inland Ins. Co.* and found that notice after a default was still meaningful. In *Michaud*, the defendant insurance company

"learned for the first time of the pendency of [a] malpractice action against its insured" eight months after default had been entered, but before any hearing on damages. 505 A.2d 786, 787 (Me. 1986). The insurance company made no attempt to participate in the proceedings, and later contended that the insured's failure to provide prompt notice absolved the insurer of its duties to defend or indemnify. *Id.* at 787–88.

The question on appeal was whether the late notice was constitutionally inadequate because it denied the insurer of a meaningful opportunity to defend the insured and itself, i.e. whether the late notice prejudiced the insurer's ability to defend the action. *Id.* at 789–90. The Court held that the notice was adequate because the default could have been set aside for good cause before the damages hearing had occurred, giving the insurer a meaningful chance to intervene in the litigation. *Id.* at 790. Admitting that the result might have been different if the insurer had actually tried to participate in the defense and been denied, the Court found that the important point in that case was the insurer's failure to make any such attempt. *Id.* at 791.

Like the insurer in *Michaud*, Defendant learned of the action against Plaintiff after a default had been answered but before the damages hearing and entry of final judgment, and nevertheless failed to make any attempt to participate in the proceedings. Given that Defendant had adequate time to conduct a full investigation into the accident behind Duggan's case, and learned of Duggan's lawsuit at a time when it still had a meaningful opportunity to intervene, Defendant cannot argue that it was prejudiced by Plaintiff's failure to comply with the Policy's notice provisions.

9

## CONCLUSION

Applying the comparison test, Defendant had a duty to defend to Plaintiff in Duggan's action because the pleadings left open the possibility that facts bringing the accident within the Policy's coverage could have been proven at trial. Defendant breached this duty when it refused to provide Plaintiff with any legal defense. It is irrelevant that the Policy did not provide indemnification for the accident based on the actual facts. Defendant's breach of its duty to defend is not excused by Plaintiff's failure to give notice or tender a request for defense because Defendant had actual notice of the accident sufficient to allow it to conduct a full investigation, locate Duggan's complaint, and meaningfully participate in the Duggan litigation.

**The entry is:**

Defendant's Motion for Summary Judgment is **denied**, and Plaintiff's Motion for Partial Summary Judgment is **granted**.

DATE: _November 10, 2009_

Roland A. Cole
Justice, Superior Court

JAMIE M JACKSON VS NORTH EAST INSURANCE COMPANY
UTN:AOCSsr  -2007-0034557                    CASE #:PORSC-CV-2007-00178
-----------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE       DATE
01 0000002055 ATTORNEY:LIBBY, KEVIN
ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046
     F FOR:NORTH EAST INSURANCE COMPANY           DEF        RTND   03/30/2007

02 0000009038 ATTORNEY:WALKER, LANCE E
ADDR:415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
     F FOR:JAMIE M JACKSON                        PL         RTND   03/30/2007




          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.                      I

STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss.                               CIVIL ACTION
                                              DOCKET NO: CV-07-178
                                              RAC - Cum- 1/11/2010

JAMIE M. JACKSON,

            Plaintiff,

      v.

NORTH EAST INSURANCE                          ORDER ON DEFENDANT
COMPANY,                                      NORTH EAST INSURANCE
                                              COMPANY'S MOTION TO
            Defendant                         RECONSIDER

Defendant North East Insurance Co. motions under Rule 59(e) for

reconsideration of the Court's November 10, 2009 Order granting plaintiff Jamie

Jackson's motion for partial summary judgment. The Court denies North East's

motion and writes to clarify and affirm its prior Order.


## BACKGROUND

In the summer of 2003 plaintiff Jamie Jackson was employed as the service

writer for Colonial Auto Sales. One night Jackson and his friend, Robert Duggan,

took two motorcycles from Colonial's showroom and went joyriding without

Colonial's permission. Both men became intoxicated and they collided while

operating the cycles under the influence. Jackson and Duggan both suffered

serious injuries in the accident.

Duggan served Colonial with a notice of claim on September 16, 2003.

Two days later Colonial forwarded this notice to defendant North East Insurance

1

Co., who insured Colonial under a commercial garage policy. North East acknowledged that it was aware of Duggan's potential claims and was investigating the matter. Duggan filed a complaint against Jackson on September 24, 2004, and Jackson was served on October 16, 2004. Jackson did not answer the complaint, and the court entered a default against him. On December 14, 2004, Duggan's attorney notified North East of these developments and provided North East with a copy of the scheduling order. North East responded with a letter stating that its policy did not cover Jackson. Finally, on August 8, 2005 Duggan's attorney informed North East that a damages hearing had been scheduled for August 11, 2005. North East took no action.

At the damages hearing a final judgment was entered against Jackson in the amount of $1,754,000. Jackson appeared at the hearing, but did not speak in his own defense. Mark Flanagan, the owner of Colonial, and Tom Wilson, Colonial's counsel, spoke with Jackson before the hearing and offered to attend. The record does not show that North East attempted to contact Jackson at any time during these proceedings, and North East never sought a declaratory judgment to clarify its relationship with Jackson.

On March 30, 2007, Jackson filed this action against North East claiming that it breached its duty to defend Jackson against Duggan in violation of the insurance contract and 24-A M.R.S.A. § 2436-B. The parties filed cross-motions for summary judgment and this Court ruled in Jackson's favor. The Court found that under the comparison test, North East had a duty to defend Jackson against Duggan's complaint. The Court also held that North East's duty to defend Jackson was not contingent on him tendering a request for assistance. Finally, the Court held that Jackson's failure to notify North East of the complaint did not

2

excuse North East from its duty to defend him in the action. While the notice did come late and from a third party, these defects did not prejudice North East's ability to defend the case.

## DISCUSSION

North East now moves for reconsideration pursuant to M.R. Civ. P. 59(e) and 60(b). The Court treats a motion to reconsider as a motion to alter or amend a judgment. *Geyerhahn v. United States Fid. & Guar. Co.*, 1999 ME 40, ¶ 9, 724 A.2d 1258, 1260. "It is a procedural vehicle to correct a judgment where there has been an error of law or clear error amounting to an abuse of discretion." *Westbrook Assocs. v. City of Westbrook*, 1994 Me. Super. LEXIS 216 (June 3, 1994).

North East claims that the Court committed prejudicial errors on two points. First, North East argues that the Court misinterpreted Illinois law and erroneously failed to consider whether Jackson's failure to tender a request for defense was a knowing and voluntary waiver of insurance coverage. Second, the Court found that Jackson's failure to provide North East with timely notice of Duggan's suit did not prejudice North East's ability to provide a defense. North East contends that this finding is based on a legal error and is clearly erroneous.

## 1. Tender of Defense

An insurer may avoid its duty to defend "based on an insured's delay in giving notice" if it can "show (a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay." *Ouellette v. Me. Bonding and Causalty Co.*, 495 A.2d 1232, 1235 (Me. 1985). North East attempts to introduce a new element to the *Ouellette* test, namely, whether a breach of the notice provision expresses an insured's intent to release the insurer from its duty.

3

In Maine an insurer's duty to defend is broader than its duty to indemnify. *Travelers Indemnity Co. v. Dingwell*, 414 A.2d 220, 227 (Me. 1980). An insurer must provide a defense if the allegations in a complaint could give rise to any set of facts that would implicate coverage. *Id.* This broad duty discourages insurers from defaulting on their obligations to insureds and ensures that parties will receive adequate representation in litigation. *See id.* (reasoning that insured should not "have to try the facts in a suit against his insurer in order to obtain a defense").

In this case Duggan's complaint alleged facts that could have given rise to a covered liability if proven at trial. As a consequence, North East was obligated to defend Jackson unless a defect in notice excused North East under *Ouellette*. It is undisputed that Jackson himself did not notify North East of the complaint or request a legal defense. Rather, North East received notice of the complaint from Duggan's attorney. The Court found that this notice was legally sufficient to trigger North East's duty to defend Jackson in the action, absent a showing of prejudice to the insurer's interests.

Maine has not conditioned an insurer's duty to defend on the insured's tendering a request for defense, and the Court declined to create such a rule in this case. The Court instead held that an insurer's adequate, actual notice of a lawsuit was itself sufficient to trigger its duty to defend. This rule was articulated by the Appellate Court of Illinois, which stated that "an insurer's duty to defend claims potentially falling within the terms of a policy is triggered by actual notice of a lawsuit . . . ." *Federated Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 668 N.E.2d 627, 633 (Ill. App. Ct 1996). The Court reasoned that a notice-

4

trigger rule is consistent with the policies underlying Maine's broad interpretation of an insurer's duty to defend.

North East contends that *Federated Mutual* is inapposite to the facts at hand. North East also argues that the Court's reading of *Federated Mutual* conflicts with other law in Illinois recognizing "the paramount right of the insured 'to seek or not to seek an insurer's participation in a claim as the insured chooses.'" *Alcan United, Inc. v. West Bend Mutual Ins. Co.*, 707 N.E.2d 687, 692 (Ill. App. Ct. 1999) (quoting *Inst. London Underwriters v. Hartford Fire Ins. Co.*, 599 N.E.2d 1311, 1316 (Ill. App. Ct. 1992), *overruled by Cincinnati Cos. v. West Am. Ins. Co.*, 701 N.E.2d 499 (Ill. 1998)). Following *Alcan*, North East argues that where an insurer receives notice of a complaint from an adverse third party rather than the insured, courts should determine whether the insured intended to waive insurance coverage with its silence. Applying this rule to the case at bar, North East argues that Jackson's intent remains a question of fact rendering summary judgment inappropriate.

To begin, North East appears to misread the law of Illinois. That state recognizes an insured's right to knowingly waive insurance coverage, or to choose which policy applies where coverages overlap. *Cincinnati Cos.*, 701 N.E.2d at 503–04. This right to "target tender" is separate from the question of whether an insurer's duty to provide an active defense is triggered. The Supreme Court of Illinois squarely addressed that question in *Cincinnati Cos.* and held that actual notice of a suit triggers an insurer's duty to defend the case. *Id.* at 505. Once triggered, the burden is on the insurer to contact the insured and ascertain whether a defense is desired. *Id.* at 503–04. Allocating this duty to the insurer fairly places the burden on the party that is "usually in a better position to know

5

the scope of the insurance contract and its duties under it," particularly where "the insured more often than not does in fact desire the insurer's involvement." *Id.* at 504–05 (citing *Federated Mutual*, 668 N.E.2d at 632).

If this Court were to apply Illinois law, it would have to find that North East's failure to contact Jackson or take other action on his behalf after learning of Duggan's claim violated its duty to defend. North East's duty to defend Jackson would have been triggered when it learned of the complaint on December 14, 2004. At that time North East had to at least contact Jackson and determine whether he desired legal assistance. While the record does show that Mark Flanagan and Tom Wilson contacted Jackson shortly before the damages hearing and offered to accompany him to court, the record does not show that those men represented North East or offered to provide legal defense.

The record also shows that Colonial instructed North East not to aid Jackson. This would not excuse North East because Colonial was not the relevant insured party in this case. Jackson was the insured, by virtue of the comparison test's application to Duggan's complaint. Only Jackson could waive North East's obligation to defend him, and the burden would have been on North East to determine his intent to do so.

However, this Court did not apply Illinois law and is not bound to do so. Maine has never required a party entitled to legal defense by application of the comparison test to also request such assistance from its insurer. To the contrary, Maine's Supreme Judicial Court has held that notice given to the insurer by an adverse third party after an entry of default was sufficient to trigger the insurer's duty to defend the case. *Am. Home Assurance Co. v. Ingeneri*, 479 A.2d 897, 902 (Me. 1984). In *Ingeneri* a professional liability insurer sought "a declaration that it

6

[had] no duty to defend" its insured in a malpractice action. *Id.* at 898. The insured had failed to notify his insurer of the malpractice claim. *Id.* at 901–02. Instead, the insurer first learned about the claim from a letter sent by the malpractice-plaintiff's attorney after an entry of default. *Id.* at 902.

The Law Court found that the entry of default "was merely a ministerial act which had no preclusive effect" prior to an entry of default judgment, so the insurer "had ample opportunity to investigate the claim and to protect its interests" despite the late notice. *Id.* Absent prejudice, the Court held that notice by a third party was sufficient to trigger the insurer's duty to defend its insured. *Id.* By holding the insurer to its duty despite the insured's silence, the Court tacitly acknowledged that an insured is presumed to desire legal defense and does not have to tender a request to its insurer.

Following *Ingeneri*, courts do not inquire into the intent of an insured who fails to notify its insurer of a claim. The insured is presumed to desire coverage and defense. In this case, this Court found that Jackson's failure to tender a request for legal defense did not excuse North East's failure to take action on Jackson's behalf. This result is consistent with *Ingeneri* and the Court declines to overturn it on North East's motion to reconsider.

## 2. Prejudice

As stated above, *Ouellette* provides the relevant test for determining whether a defect in notice excuses an insurer from its duty to defend. An insurer may avoid its duty to defend "based on an insured's delay in giving notice" if it can "show (a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay." *Ouellette*, 495 A.2d at 1235.

7

Jackson indisputably breached the notice provision in this case, so the only question for the Court is whether the breach prejudiced North East.

Notice provisions in insurance contracts exist to afford insurers an adequate opportunity to investigate claims and defend their interests. *See Ouellette*, 495 A.2d at 1234; *Ingeneri*, 479 A.2d at 902. North East was notified of the accident and Duggan's potential claims two months after the event. This early initial notice allowed the insurer to investigate the circumstances of the accident and obtain the evidence it needed to mount a legal defense. On these facts the Court found that Jackson's breach of the notice provision did not impair North East's substantive ability to defend the action. The Court noted that North East had not claimed any such substantive prejudice.

North East did, however, claim that Jackson's breach caused it procedural prejudice by impairing North East's opportunity to present substantive defenses to the tribunal before the entry of default. The Court found that this manner of procedural prejudice had been addressed in *Michaud v. Mutual Fire, Marine & Inland Insurance Co.*, 505 A.2d 786 (Me. 1986). In *Michaud* the plaintiff had sued a malpractice insurer "pursuant to Maine's reach and apply statute . . . seeking insurance proceeds to satisfy a judgment" against the insured. *Id.* at 787. The insurer argued that application of the statute in that case would violate its right to due process because it had not received adequate notice in the underlying malpractice case. *Id.*

The insurer in *Michaud* received notice of a potential claim against its insured in March of 1978, but was unable to contact the insured during the subsequent year. *Id.* The malpractice plaintiff filed a complaint against the insured on April 2, 1979, and the court entered a default on June 4, 1979. *Id.* The

8

insurer did not learn of the complaint until February 20, 1980, six months after the default but eight months before the damages hearing and entry of final judgment. *Id.* The insurer did not attempt to participate in the malpractice action, which ended in a default judgment against the insured. *Id.*

In the subsequent reach-and-apply action, the insurer claimed that the late notice in the underlying suit had deprived it of a meaningful opportunity to be heard. *Id.* at 789. The insurer argued that enforcing the judgment would violate its right to due process because it had not been allowed to defend the merits of the malpractice claim. *Id.* The Law Court rejected this argument and found that the insurer had been given a meaningful opportunity to defend its interests despite the late notice. *Id.* at 790–91.

The Law Court reasoned that under M.R. Civ. P. 55(c), an entry of default may be set aside for good cause. *Id.* at 790. "Good cause" consists of "a good excuse for the failure to answer or appear and a meritorious defense to the action." *Id.* at 790–91 (citing *McNutt v. Johnnsen*, 477 A.2d 738, 740 (Me. 1984)). If the insurer had attempted to intervene in the malpractice action it could have presented the trial court with "the circumstances surrounding the occurrence of the default and with facts supporting any defense its insured may have had to the action." *Id.* at 791. The Court noted that the insurer likely would have succeeded in setting aside the default given Maine's preference for judgments on the merits. *Id.* (citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)).

This Court applied the reasoning of *Michaud* and found that Jackson's failure to notify North East of Duggan's complaint had not prejudiced the insurer. Like in *Michaud*, North East learned about the complaint after the entry of default, but prior to the damages hearing and entry of final judgment. North

9

East thus learned of the litigation at a time when the default could have been set aside on a showing of good cause, i.e. a showing of a good excuse for failing to answer and a meritorious defense. North East had already investigated the accident. If North East had bothered to intervene it could have presented evidence of comparative negligence or other substantive defenses to the court. Had it succeeded in setting aside the default, there would have been no prejudice; had it failed, it would have firm ground to contest its obligations under the policy.

North East did not intervene, however, and instead chose to do nothing. This choice all but guaranteed the entry of final judgment against Jackson. Under these circumstances, Jackson's failure to give notice of the suit did not prejudice North East. Rather, North East's interests were prejudiced by its own choice to leave Jackson without legal defense. Following *Michaud*, the Court thus found that North East had failed to satisfy the second prong of the *Ouellette* test as a matter of law and was thus not released from its duty to defend.

North East now contends that the Court erred in its analysis, and argues that *Michaud* is inapplicable because the duty to defend was not at issue in that case. North East renews its argument that it was procedurally prejudiced by its late receipt of notice, or alternatively that material questions of fact remain on the issue of prejudice. The Court disagrees. While *Michaud* did not specifically address an insurer's duty to defend, it did address the issue of prejudice and the ability to put on a constitutionally adequate defense. The Law Court's rationale in holding that late notice had not deprived the insurer of due process in *Michaud* equally supports this Court's finding that late notice did not prejudice North East within the meaning of *Ouellette*.

In this case North East first learned of the potential claim one year before any complaint was filed. It had ample opportunity to investigate the facts and circumstances of the case, and it did in fact conduct that investigation. When North East received notice of the complaint after the entry of default, it had the chance to present evidence of substantive defenses to the court through a Rule 55(c) motion to set the default aside. The present situation would undoubtedly be different had North East brought such a motion, but this Court does not need to speculate on what might have been. The important point is that when North East received notice of Duggan's complaint, it had an opportunity to defend both its own interests and Jackson's. On these facts this Court cannot say North East suffered any prejudice from the delay.

This result is supported by *Ingeneri*, where the Law Court did address the prejudicial effect of a default against an insured. In *Ingeneri* a malpractice insurer first learned of a complaint against its insured through a letter from the opposing party's counsel sent after an entry of default. *Ingeneri*, 479 A.2d at 902. The Law Court stated that the entry of default "was merely a ministerial act which had no preclusive effect" prior to final judgment. *Id.* The Court thus held that the insurer had "ample opportunity to investigate the claim and to protect its interests . . . ." *Id.* The Law Court concluded that the insurer had suffered no prejudice and consequently was not relieved of its duty to defend the insured. *Id.*

Like the insurer in *Ingeneri*, North East had ample opportunity to defend both its own and Jackson's interests in Duggan's action. North East was not prejudiced by Jackson's violation of the notice provision, and was not relieved of its duty to provide a defense.

11

**The entry is:**

Defendant North East Insurance Co.'s motion to reconsider is **denied**.


DATE: ___January 11, 2010___

_____
Roland A. Cole
Justice, Superior Court

----------------------------------------------------------------------------

| 01 | 0000002055 | LIBBY, KEVIN | | | |
|----|------------|--------------|---|---|---|
| | 95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046 | | | | |
| F | NORTH EAST INSURANCE COMPANY | | DEF | RTND | 03/30/2007 |

| 02 | 0000009038 | WALKER, LANCE E | | | |
|----|------------|-----------------|---|---|---|
| | 415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600 | | | | |
| F | JAMIE M JACKSON | | PL | RTND | 03/30/2007 |

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: CV-07-178

                                        RAC - CUM - 9/8/2010


JAMIE M. JACKSON,

            Plaintiff,
                                                ORDER
      v.

NORTH EAST INSURANCE CO.,

            Defendant


Plaintiff Jamie M. Jackson moves for partial summary judgment entitling

to damages of $1,754,000 plus pre- and post-judgment interest, enhanced

statutory interest, attorney's fees, and costs. Defendant North East Insurance

Company cross-moves for partial summary judgment declaring that Mr. Jackson

is only entitled to recover reasonable attorney's fees in this action.

## BACKGROUND

The facts of this case have been developed through earlier summary

judgment proceedings.[1] In July 2003, Colonial Auto Sales was insured under a

commercial garage policy issued by defendant North East Insurance Company.

(Order of Nov. 10, 2009 at 1.) Colonial employed plaintiff Jamie Jackson as its

service writer. (Order of Nov. 10, 2009 at 2.) On the evening of July 11, 2003, Mr.

---

[1] Facts established in one summary judgment proceeding are "deemed admitted for all further summary judgment proceedings, both before the trial court and on appeal." Maine State Bar Association, *The Maine Rules of Civil Procedure with Advisory Committee Notes and Practice Commentary*, § 56.1(II)(8)(G) (2008) (citing *Ponnales v. Celulares Telefonica, Inc.*, 447 F.2d 79, 81 (1st Cir. 2006); *Rogers v. Jackson*, 2002 ME 140, ¶ 7, 804 A.2d 379, 380-81; M.R. Civ. P. 56(h)(4); D. Me. Local R. 56(e)).

1

Jackson and his friend Robert Duggan shared dinner and drinks at a restaurant, and then stopped by Colonial's showroom so that Mr. Jackson could use the facilities. (Pl.'s Add'l S.M.F. ¶¶ 25–26.) Colonial was closed at the time. (Pl.'s Add'l S.M.F. ¶ 25.)

Colonial had two motorcycles on display in its showroom. (Pl.'s Add'l S.M.F. ¶ 30.) When Mr. Jackson exited the bathroom, Mr. Duggan was seated on one of the bikes and suggested that they take them out for a ride. (Pl.'s Add'l S.M.F. ¶ 28.) One of the motorcycles was not registered, so Mr. Duggan attached a license plate he found in his truck. (Pl.'s Add'l S.M.F. ¶ 29.) They then took the bikes from the showroom for a late-night joyride. (Pl.'s Add'l S.M.F. ¶ 30.) They did not have Colonial's express or implied permission to do so. (Pl.'s Add'l S.M.F. ¶¶ 40–41.)

Without any clear plan, the men drove the motorcycles to two different bars, drinking as they went. (Pl.'s Add'l S.M.F. ¶ 31; Order of Nov. 10, 2009 at 2.) By the time they arrived at the second bar, Mr. Duggan had grown concerned that Mr. Jackson was intoxicated, inexperienced at riding a motorcycle, or both.[2] (Pl.'s Add'l S.M.F. ¶ 32.) He asked Mr. Jackson to "ease up" after watching him do a power hold in the bar parking lot, and later stopped on the road to ask Mr. Jackson to slow down. (Pl.'s Add'l S.M.F. ¶¶ 33–34.) The two men collided shortly thereafter. (Pl.'s Add'l S.M.F. ¶ 35.) Both were severely injured. (Pl.'s Add'l S.M.F. ¶ 36.)

---

[2] The plaintiff denies this statement of material fact, but does not offer a record citation to rebut the assertion. Other denials are supported only by vague references to an entire deposition transcript, or by citations that do not actually contradict the facts asserted. Assertions and denials must be followed by citations "to the specific page[s] or paragraph[s] of identified record material supporting" them. M.R. Civ. P. 56(h)(4) (2009). "The court may disregard any statement" not so supported, and assertions are "deemed admitted unless properly controverted." *Id.*

2

Colonial fired Mr. Jackson after the accident. (Pl.'s Add'l S.M.F. ¶ 37.) It also obtained a release from Mr. Jackson in which he acknowledged that he did not have permission to be on Colonial's premises after hours or to take and use the motorcycles as he did. (Pl.'s Add'l S.M.F. ¶¶ 38, 40.) Mr. Jackson admitted to the same in his deposition testimony. (Pl.'s Add'l S.M.F. ¶ 41.)

Mr. Duggan served Colonial with a Notice of Claim by letter dated September 16, 2003. (Pl.'s Add'l S.M.F. ¶ 43.) Colonial retained Attorney Thomas P. Wilson to represent its interests. (Pl.'s Add'l S.M.F. ¶ 43.) At the time of the accident Colonial was covered by its commercial garage insurance policy with North East. (Pl.'s Add'l S.M.F. ¶ 44.) Attorney Wilson informed North East of Duggan's claim by a letter dated September 18, 2003. (Pl.'s Add'l S.M.F. ¶ 46.) On October 1, 2003, North East sent a letter to Mr. Duggan's attorney to request information and an interview with Mr. Duggan. (Pl.'s Add'l S.M.F. ¶ 48.) North East also obtained the police report of the accident and interviewed Mr. Jackson around this time. (Pl.'s Add'l S.M.F. ¶ 49.)

Mr. Duggan filed a complaint against Mr. Jackson approximately one year later on September 24, 2004. (Pl.'s Add'l S.M.F. ¶ 51.) The complaint did not name or identify Colonial or North East, and omitted many of the circumstances surrounding the accident. (Pl.'s Add'l S.M.F. ¶¶ 52–53; Pl.'s June 5, 2001 S.M.F. Exh. 1.) Colonial was not served with the complaint, and North East was not initially notified that any action had been commenced. (Pl.'s Add'l S.M.F. ¶ 54.)

Mr. Jackson denies that he was ever served with Mr. Duggan's complaint. (Opp. Add'l S.M.F. ¶ 55.) However, a return of service stating that Mr. Jackson was served with a summons and complaint in hand on October 16, 2004, was filed in that suit. (Pl.'s Add'l S.M.F. ¶ 56.) In her affidavit testimony, Officer Joyce

Hodsdon stated that she remembered serving Mr. Jackson at his home. (Pl.'s Add'l S.M.F. ¶ 58.) Whether or not he was served, Mr. Jackson was aware of the lawsuit that autumn and did not make any attempt to defend himself. (Pl.'s Add'l S.M.F. ¶¶ 67–68; Order of Nov. 10, 2009 at 3.) A default was entered against him on December 10, 2004. (Pl.'s Add'l S.M.F. ¶ 70.)

During this time Mr. Jackson was busy separating from his girlfriend, working out child-custody issues, and moving from his former home. (Pl.'s Add'l S.M.F. ¶ 59.) Between the time of the accident and the final resolution of the Duggan suit, Mr. Jackson variously lived in Casco, Naples, and Kettle Cove in Maine, before finally moving to Virginia. (Pl.'s Add'l S.M.F. ¶¶ 60–63.) He does not remember leaving any forwarding addresses. (Pl.'s Add'l S.M.F. ¶ 64.) Despite his many moves, Mr. Jackson remained employed while the Duggan suit was pending. (Pl.'s Add'l S.M.F. ¶ 65.) He worked for three different employers at various times, and at one point was self-employed in a very profitable venture. (Pl.'s Add'l S.M.F. ¶¶ 65–66.)

North East was first notified of the lawsuit by a letter from Mr. Duggan's attorney dated December 14, 2004. (Pl.'s Add'l S.M.F. ¶¶ 69–70.) The letter included a copy of the complaint and informed North East that a default had been entered. (Pl.'s Add'l S.M.F. ¶ 70.) North East did not receive the letter until January 7, 2005. (Pl.'s Add'l S.M.F. ¶ 60.) On April 8, 2005, North East mailed Mr. Duggan's counsel a letter informing him that it would not provide Mr. Jackson any defense or coverage under Colonial's commercial garage policy. (Order of Nov. 10, 2009 at 3.) Mr. Jackson never contacted Colonial or North East to request a defense, and North East never contacted Mr. Jackson to offer one. (Def.'s S.M.F. ¶ 12; Pl.'s Add'l S.M.F. ¶¶ 42, 67.)

4

On August 9, 2005, North East received a letter from Mr. Duggan's attorney informing it that a damages hearing had been scheduled for August 11, 2005. (Pl.'s Add'l S.M.F. ¶ 71.) North East declined to represent Mr. Jackson at the hearing. (Def.'s S.M.F. ¶ 18.) Mr. Jackson learned of the hearing from Colonial. (Pl.'s Add'l S.M.F. ¶¶ 72–73.) He attended the hearing himself, but did not say anything in his own defense. (Def.'s S.M.F. ¶ 19.) A final judgment of $1,754,000 was entered against Mr. Jackson on or about August 14, 2005. (Def.'s S.M.F. ¶ 20.)

Mr. Jackson filed this action against North East on March 30, 2007, claiming that North East breached a contractual duty to defend him under Colonial's commercial garage policy. In an order dated November 10, 2009, and affirmed after reconsideration on January 11, 2010, this court determined that North East had indeed owed Mr. Jackson a legal defense under the policy. The few facts alleged in Mr. Duggan's complaint could potentially have proven a claim within the insurance policy's scope of coverage, and Mr. Jackson was not obligated to expressly request coverage where North East had actual knowledge of the potential claim and pending suit. The fact that actual notice of the suit came late did not excuse North East because it had conducted an early investigation into the accident and was notified in time to request that the initial default be set aside. The parties now seek partial summary judgment on the issue of damages flowing form North East's breach.

## DISCUSSION

There are no genuine issues of material fact, so summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653,

5

655. The cross-motions before the court ask it to clarify the legal consequences that flow from an insurer's breach of its duty to defend. The court notes at the outset that North East has no contractual duty to indemnify Mr. Jackson for liability arising from the motorcycle incident. His drunk-driving accident on stolen motorcycles falls well outside the scope of Colonial's commercial garage policy, as Mr. Jackson himself admits. (Pl.'s Reply Memorandum dated June 23, 2010 at 2.) However, Mr. Duggan's artful pleading did make North East contractually obligated to defend Mr. Jackson against Mr. Duggan's claim. North East's failure to tender that defense was "a breach of the insurance contract, and . . . normal contract damage principles apply." *Elliott v. The Hanover Ins. Co.*, 1998 ME 138, ¶ 11, 711 A.2d 1310, 1313 (citing *Polaroid Corp. v. The Travelers Indemnity Co.*, 610 N.E.2d 912, 921 (Mass. 1993)).

When an insurer breaches its duty to defend the insured, it is "liable to pay such damages as will place the insured in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning." *Gibson v. Farm Family Mutual Ins. Co.*, 673 A.2d 1350, 1355 (Me. 1996). The insured has the burden of proving the actual economic harm it suffered from the breach. *Thurston v. Continental Casualty Co.*, 567 A.2d 922, 925 (Me. 1989); *see Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 5, 697 A.2d 417, 419 (non-breaching party has burden of establishing its damages). This does not preclude the insurer from "asserting non-coverage as a defense in a subsequent action by the insured or the insured's assignee." *Elliott*, 1998 ME 138, ¶ 11, 711 A.2d at 1313.

The above principles do not conflict so long as an insured takes appropriate steps to defend itself after an insurer fails to provide a defense. In

such a case, the insured's interests are fully represented and the question of liability is resolved through the adversarial process. The breaching insurer pays the insured's defense costs, and provides indemnity if there is liability within the policy coverage. More challenging issues arise where an insured fails to act in its own defense and incurs a default. The question then becomes whether and to what extent the insured's liability is a consequential damage of the insurer's breach, and whether non-coverage remains a viable defense.

Mr. Jackson argues that when an insurer breaches its duty to defend and the insured then defaults, the insurer should be liable for the entire default judgment as a consequential damage of the breach. This has an appealing logic. If the insurer had performed its obligation to defend the insured, the insured would not have defaulted and its liability might have been reduced or avoided. Default is a foreseeable consequence of the failure to provide legal representation, so the entire default judgment becomes a consequential damage as a result. The basis of the liability becomes the breach rather than the underlying claim, so the insurer has to pay even if it would not have had to provide indemnity under the policy.

To support his position Mr. Jackson directs the court to the California case of *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (Cal. Ct. App. 1997). There, the plaintiff was insured under a motor vehicle policy when he negligently caused a car accident. *Id.* at 830. His mother-in-law was injured in the crash. *Id.* She sued him for negligence, and he tendered a defense to the defendant insurer. *Id.* The insurer refused to provide a defense because it said the policy did not cover the claim. *Id.* At that time, however, the insurer had information that, if true, would have brought the claim within the policy coverage. *Id.* The plaintiff

7

could not afford to hire defense counsel, and the court entered default judgment. *Id.* at 830. After the default, it was determined that there was in fact no coverage under the policy. *Id.* at 831.

In the plaintiff's action against the insurer, the court found that the insurer had breached the insurance contract by failing to defend and was liable in tort for breaching the covenant of good faith and fair dealing. *Id.* The court reviewed California law on the subject, including that state's seminal case of *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966). *Gray* established California's "general rule that an insurer that wrongfully refuses to defend is liable on the judgment against the insured." *Amato*, 53 Cal. App. 4th at 833. After examining *Gray* and its progeny, the court determined that "[w]hen the insurer refuses to defend and the insured does *not* employ counsel and presents *no* defense, it *can* be said the ensuing default judgment is proximately caused by the insurer's breach of the duty to defend." *Id.* at 834 (emphasis in original).

The court also refused to allow the insurer to avoid or reduce its liability by asserting lack of coverage. It appears to have done so partially because of the insurer's tort liability, *id.* at 834–35, and partially because it is well established in California that "[h]aving defaulted . . . the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him." *Id.* 839 (quoting *Gray*, 65 Cal. 2d at 280). Mr. Jackson urges this court to adopt the laws of California for Maine.

The difficulty of Mr. Jackson's position is that Maine has expressly parted from California on a number of fundamental principles underpinning *Amato*. To begin, Maine has disavowed the "tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured." *Marquis v.*

8

*Farm Family Mutual Ins. Co.*, 628 A.2d 644, 652 (Me. 1993). Maine also rejects the reasoning of *Gray* that is so essential to *Amato*. Unlike California, Maine assumes that an insurer can assert non-coverage as a defense after it breaches a duty to defend. *Elliott*, 1998 ME 138, ¶ 11, 711 A.2d at 1313. To do otherwise would make "the insurer's duty to indemnify . . . coextensive with its duty to defend," a result Maine flatly rejects. *Id.* Maine also limits an insured's recovery to its actual economic damages, which the insured bears the burden of proving. *Thurston*, 567 A.2d at 924–925; *Marquis*, 628 A.2d at 650. Taken together, the result in *Amato* is fundamentally incompatible with Maine's principled adherence to the view that an insurance contract is to be treated like any other. *Gibson*, 673 A.2d at 1354–55; *Marquis*, 628 A.2d at 652.

While rejecting *Amato* does not necessarily shed light on how to determine the consequential damages of an insurer's wrongful failure to defend when the insured incurs a default, the Law Court has not been completely silent on this issue. In a different context, it stated that an "insurer should not be liable for an unchallenged amount judicially determined after an uncontested hearing on damages . . . [unless] the insured or the claimant can show that it is reasonable, and only after coverage is deemed to exist." *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 19, 905 A.2d 819, 828. The Court has also repeatedly stated "that an unjustified refusal to defend should be treated as a breach of the insurance contract and that normal contract damage principles apply." *Elliott*, 1998 ME 138, ¶ 11, 711 A.2d at 1313 (citing *Polaroid Corp.*, 610 N.E.2d at 921); *Gibson*, 673 A.2d at 1354–55; *Marquis*, 628 A.2d at 652. Under the circumstances of this case, the doctrine of avoidable consequences or mitigation of damages clearly applies. Generally, "a party who suffers injury or loss is under an affirmative obligation

9

to take reasonable steps to minimize or mitigate the damages. Horton & McGehee, *Maine Civil Remedies* § 4-3(d)(1) at 69 (4th ed. 2004) (citing *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 24, 748 A.2d 961, 969–70). At a minimum this should require the non-breaching party to attempt to answer a complaint and make a reasonable effort to secure legal assistance.

There is no dispute that Mr. Jackson's liability in this case is wholly outside the insurance contract's indemnity coverage. It also undisputed that Mr. Jackson did not make any effort to defend himself against Mr. Duggan's action. Mr. Jackson protests that he did not believe he could afford legal representation at the time, so he did not bother to try. The high cost of legal defense and the lack of legal services for low-income individuals are serious problems. However, Mr. Jackson did not even attempt to contact an attorney, utilize the legal assistance resources that are available in Maine, or otherwise seek help. Perhaps more importantly, Mr. Jackson did not need an attorney to make an answer and bring his situation to the court's attention.

Holding North East liable for Mr. Jackson's judgment would be inconsistent with Maine precedent and unjust under the circumstances. North East contracted with Colonial to insure its commercial garage operations. Mr. Jackson entered Colonial's premises after hours without permission, stole two motorcycles from Colonial's showroom, and crashed one of the motorcycles while driving under the influence of alcohol. North East has clearly established that it has no duty to indemnify Mr. Jackson under the policy, and Mr. Jackson made no modicum of effort to defend his own interests in the underlying action. Making North East pay the $1,750,000 judgment against Mr. Jackson would radically expand the coverage that North East and Colonial bargained for. It

10

would render the duty to defend coextensive with a duty to indemnify liability never contemplated by the actual parties to the insurance contract.

On these facts, Mr. Jackson's damages were not a result of North East's breach as a matter of law. If North East had defended Mr. Jackson and he had been found liable, North East would not be obligated to pay the judgment. Unfortunately, North East did not provide that defense. If Mr. Jackson had secured a lawyer or defended himself, North East would certainly be obligated to pay his costs and attorney's fees, but it would not have to provide indemnity. Mr. Jackson's utter failure to defend himself should not alter the result. Presumably he had every incentive to make a vigorous defense, but he did not.

North East must pay the expenses Mr. Jackson incurred in defending the underlying suit and his reasonable attorney's fees and costs in pursuing this action per 24-A M.R.S. § 2436-A (2009). It is not obligated to pay any liability arising from the motorcycle accident. Since Mr. Jackson did not incur any expense in the underlying suit, his recovery is limited to his costs and attorney's fees in this action as allowed by statute.

**The entry is:**

Plaintiff Jamie Jackson's motion for partial summary judgment is denied. Defendant North East Insurance Company's motion for partial summary judgment is granted.

DATE: September 8, 2010

_____
Roland A. Cole
Justice, Superior Court

11

---

01 0000002055           LIBBY, KEVIN
    95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046

| F | NORTH EAST INSURANCE COMPANY | DEF | RTND | 03/30/2007 |

02 0000009038           WALKER, LANCE E
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| F | JAMIE M JACKSON | PL | RTND | 03/30/2007 |

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-07-178
RAC - CUM - 4/13.2011

JAMIE M. JACKSON,

3

Plaintiff,

**ORDER**

v.

NORTH EAST INSURANCE CO.,

Defendant

Plaintiff Jamie M. Jackson moves for reconsideration of the court's September 8, 2010 order declaring that he may only recover his costs and attorney's fees in this contract action.

## BACKGROUND

The court's prior orders have recounted this case's facts and procedural history in detail, and only a brief outline will be provided here. On July 11, 2003, Mr. Jackson took a motorcycle from his employer without permission and rode to a number of bars with his friend, Robert Duggan. After a night of drinking, the two men collided on the road. Both were severely injured. Mr. Jackson was fired from his employment as a result of the incident.

At the time of the incident, North East Insurance Co. insured Mr. Jackson's employer under a commercial garage policy. On September 16, 2003, Mr. Duggan served the employer with a Notice of Claim, and notified North East of the claim two days later. North East investigated the accident at this time. One year later, Mr. Duggan filed a complaint against Mr. Jackson on September 24,

1

2004. The complaint did not name the employer or North East, and omitted most of the circumstances surrounding the accident. The employer was not served, and North East was not notified.

A return stating that Mr. Jackson received in-hand service was filed on October 15, 2004, and Mr. Jackson admits he was aware of the lawsuit that autumn. He did not file an answer or otherwise attempt to defend himself, and a default was entered on December 10, 2004. Mr. Duggan's attorney then notified North East of the default by a letter dated December 14, 2004. North East did not receive the letter until January 7, 2005. This was North East's first notice that a lawsuit had been filed. On April 8, 2005, North East mailed Mr. Duggan's counsel a letter stating that it would not provide Mr. Jackson with any defense or coverage under his former employer's commercial garage policy. Mr. Jackson never contacted North East.

A damages hearing was held on August 11, 2005. Mr. Jackson attended the hearing after learning of it through his former employer, who offered to attend with his own attorney. The record does not divulge whether the employer did attend, but it is clear that Mr. Jackson did not speak in his own defense. A final judgment of $1,754,000 was entered against him on or about August 14, 2005. He filed this action against North East on March 30, 2007, claiming that North East breached its contractual duty to defend him under his former employer's commercial garage policy.

In an order dated November 10, 2009, affirmed after reconsideration on January 11, 2010, this court determined that North East had a duty to defend Mr. Jackson under the policy and had breached that duty by failing to provide a legal defense after receiving actual notice of the suit. Mr. Jackson subsequently moved

2

for summary judgment on the question of damages, arguing that North East should be estopped from denying coverage and be liable for the entire judgment. North East filed a cross-motion for summary judgment seeking to limit Mr. Jackson's recovery to the attorney's fees mandated by 24-A M.R.S. § 2436-B because as an insolvent debtor he had not suffered any actual harm, because North East did not owe him a duty of indemnity under the policy, and because his failure to defend himself was the actual cause of the judgment against him.

On September 8, 2010, this court issued an order in North East's favor. The court first denied Mr. Jackson's motion for summary judgment and rejected his invitation to adopt the laws of California. Under established Maine law, ordinary contract principles determine the consequences of an insurer's failure to provide a warranted defense. *Elliott v. The Hanover Ins. Co.*, 1998 ME 138, ¶ 11, 711 A.2d 1310, 1313 (citing *Polaroid Corp. v. The Travelers Indemnity Co.*, 610 N.E.2d 912, 921 (Mass. 1993)). When an insurer breaches its duty to defend the insured, it is "liable to pay such damages as will place the insured in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning." *Gibson v. Farm Family Mutual Ins. Co.*, 673 A.2d 1350, 1355 (Me. 1996).

Since the inquiry concerns what might have happened had the contract been performed, the insurer can assert lack of indemnity coverage as a defense against liability. *Elliott*, 1998 ME 138, ¶ 11, 711, A.2d at 1313. This preserves the principle that the duty to defend is broader than the duty to indemnify. *Id.* The insured bears the burden of proving the actual economic damages caused by the insurer's breach. *Thurston v. Continental Casualty Co.*, 567 A.2d 922, 925 (Me.

3

1989). His failure or inability to pay an underlying judgment does not foreclose the potential for such damage. *Id.* at 924 n.2.

The court then addressed the challenge of applying the above principles to a case where the insured defaulted in the underlying suit against him, and where the underlying judgment against him indisputably fell outside the insurance policy's coverage. From a case in which an insurer provided its insured a defense under a reservation of rights, the court drew the principle that an "insurer should not be liable for an unchallenged amount judicially determined after an uncontested hearing on damages . . . [unless] the insured or the claimant can show that it is reasonable, and only after coverage is deemed to exist. *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 19, 905 A.2d 819, 828. The court also noted that "a party who suffers injury or loss is under an affirmative obligation to take reasonable steps to minimize or mitigate the damages" following a breach of contract. Horton & McGehee, *Maine Civil Remedies* § 4-3(d)(1) at 69 (4th ed. 2004) (citing *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 24, 748 A.2d 961, 969–70).

While generally "[t]he assessment of damages is the sole province of the jury," *Wood v. Bell*, 2006 ME 98, ¶ 24, 902 A.2d 843, 851, the court found that the record in this case allowed the question to be decided as a matter of law. Mr. Jackson's failure to make any attempt to seek assistance, avoid default, or defend himself at the damages hearing in Mr. Duggan's suit was patently unreasonable. This, coupled with the uncontested lack of policy coverage, precluded Mr. Jackson from holding North East responsible for the judgment against him. Mr. Jackson had not produced any evidence of other economic harm caused by North East's breach, partially due to his failure to make any expenditure in his own defense. It followed that he could not recover any other damages flowing

4

from his default following North East's breach. The court granted North East's motion, holding that Mr. Jackson could only recover his attorney's fees in this action as mandated by 24-A M.R.S. § 2436-B.

## DISCUSSION

Mr. Jackson now moves the court to reconsider that portion of its order granting North East's motion for summary judgment. The court treats a motion to reconsider as a motion to alter or amend a judgment. *Geyerhahn v. United States Fid. & Guar. Co.*, 1999 ME 40, ¶ 9, 724 A.2d 1258, 1260. "It is a procedural vehicle to correct a judgment where there has been an error of law or clear error amounting to an abuse of discretion." *Westbrook Assocs. v. City of Westbrook*, 1994 Me. Super. LEXIS 216 (June 3, 1994). Mr. Jackson contends that the measure of damages is a factual question that should be resolved at trial, and that the court erred in finding that his failure to defend himself resolves the issue as a matter of law. Whether a plaintiff failed to take reasonable steps to reduce his damages, and how this should impact the total reward, are also questions that should go to the factfinder. Additionally, in a separate letter submitted after his motion Mr. Jackson objects to the court's consideration of the doctrine of mitigation in the first place because this is an affirmative defense that North East did not raise in the pleadings.

While the failure to plead an affirmative defense generally results in its waiver, *R.C. Moore, Inc. v. Les-Care Kitchens, Inc.*, 2007 ME 138, ¶ 24, 931 A.2d 1081, 1086, if evidence relating to an affirmative defense is introduced without objection and the opposing party is not surprised, does not object, and has the opportunity to respond, the defense may still be permitted. *Payson v. Cohen*, 158 Me. 297, 301, 183 A.2d 510, 512 (1962). North East has attacked Mr. Jackson's

5

failure to seek or request a defense from the start of this litigation. Initially it did so to argue that his failure estopped him from claiming that North East had a duty to defend him against Mr. Duggan. Of greater relevance, North East recently asserted Mr. Jackson's failure to mitigate as a defense on the issue of damages, and offered both evidence and argument in the summary judgment record for support. Mr. Jackson did not object to this line of argument, and in fact responded by arguing that financial hardship explained his initial default. He is now estopped from objecting to North East's use of the defense.

Turning to the substance of Mr. Jackson's motion, his accusation of error is correct in at least one respect. While it did not explicitly say so, the court's order implies that North East's breach occurred prior to Mr. Jackson's initial default in the underlying action. In fact, North East did not breach its contractual duty until it refused to defend Mr. Jackson after learning of Mr. Duggan's lawsuit, which occurred after the entry of default. While North East's inaction made it impossible for the court to say whether the entry of default materially prejudiced the insurer's ability to defend itself so as to excuse nonperformance, the sequence of events cannot be ignored when determining the consequences of that nonperformance. With this in mind, the court must determine whether it correctly granted summary judgment on the issue of damages in North East's favor.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. The existence of actual economic damages is a prima facie element of any claim for breach of contract. *Thurston*, 567 A.2d at 924–25. Mr. Jackson failed

to place any evidence of damages in the summary judgment record other than the entire underlying judgment against him. He did not claim injury to his credit rating or other collateral costs, *see Thurston*, 567 A.2d at 924, and did not attempt to show how North East's active participation would have altered the outcome. Instead, he argued that the entire judgment amount was itself a consequence of North East's breach, implying that he would have incurred no liability if North East had intervened after his initial default.

North East argued in its motion that Mr. Jackson was not entitled to the automatic award of the underlying judgment for two reasons. First, the award was based on events falling well outside the insurance policy's coverage and North East had no duty to provide indemnity. Second, Mr. Jackson had failed to show that the judgment reflected actual economic harm caused by the breach, or had itself caused him actual harm. Mr. Jackson did not attempt to introduce evidence rebutting these claims in his reply.[1]

While there is no evidence that Mr. Jackson *has not* been damaged, he bears the burden of affirmatively showing that he has suffered actual economic harm. The only damage that Mr. Jackson claims to have suffered is the $1.754 million judgment for which he "remains personally responsible" and which allegedly came into being as "a natural consequence of North East's breach of the duty to defend . . . ." (Compl. ¶¶ 27–28.) The question then becomes: Can the entire amount of an underlying judgment be recovered as a "consequential damage" caused by an insurer's breach of its duty to defend where: the insured did not appear and took no steps to defend himself; the insurer did not have

---

[1] Mr. Jackson now professes to have an expert witness ready to testify on the issue of economic harm if the question is allowed to go to trial.

notice of the suit until after the entry of default; and the judgment falls outside the insurance policy's indemnity coverage?

The present case is materially different from one in which an insurer wrongfully declines to defend its insured before an entry of default. In such a case, the insured is often an actual party to the insurance contract who expects to receive the benefit of a legal defense in exchange for the payment of a premium. A default and default judgment follow, arguably as foreseeable consequences of the insurer's breach. Here, Mr. Jackson had no reasonable basis to rely on North East for assistance and did not do so. He was never a party to the insurance contract, never paid a premium to North East, and had no expectation of coverage. Upon being sued, he did not request a defense and defaulted. North East did not learn that an action had been filed and that it might be at real risk of incurring liability until after the entry of default. While its refusal to defend Mr. Jackson ultimately did breach North East's contract with his former employer, this breach did not cause Mr. Jackson's default.[2]

With Mr. Jackson essentially having admitted to liability through his default, the factual question remains whether North East's failure to intervene after the default was a substantial factor causing the judgment against him. The court could plausibly find as a matter of law that it was not. Mr. Jackson did not introduce any evidence or argument to show that North East could have set the default aside, and he has not claimed that the judgment would have been

---

[2] This raises the conundrum left from the earlier determination that North East did have a duty to defend Mr. Jackson. Under a straightforward application of the "eight-corners" test, North East clearly had a duty to defend Mr. Jackson as an "insured" under his employer's policy. However, a breach of the duty to defend is treated like a breach of contract, and North East never had a contract with Mr. Jackson. Its contract was with Mr. Jackson's former employer, who faces no liability and had no connection with Mr. Jackson's actions.

8

entered for a lesser amount with North East's involvement. In sum, he has not shown that North East's breach, rather than Mr. Jackson's own default, was the cause of the judgment. This is what North East argued in its motion for summary judgment.

Mr. Jackson did not meet his burden of production. He only claimed the full amount of the Duggan judgment as damages. North East moved for summary judgment on the ground that he had no evidence to show that he would have avoided the full Duggan judgment had North East provided him a defense when it learned of the suit's existence, and that he had not claimed any lesser damages. Mr. Jackson did not respond with any evidence to rebut North East's challenge, and has thus failed to establish a sufficient causal link between North East's breach and Mr. Jackson's alleged damages. *See Addy v. Jenkins, Inc.,* 2009 ME 46, ¶¶ 14–15, 969 A.2d at 935, 939–40 (plaintiff's failure to present sufficient evidence of causation warranted grant of summary judgment in defendant's favor).

**The entry is:**

Plaintiff Jamie Jackson's motion for reconsideration is denied. The court affirms its order dated September 8, 2010, as modified by this decision.

DATE: April 13, 2011

Roland A. Cole
Justice, Superior Court

9

01 0000002055      LIBBY, KEVIN

95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046

F      NORTH EAST INSURANCE COMPANY      DEF      RTND      03/30/2007

02 0000009038      WALKER, LANCE E

415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

F      JAMIE M JACKSON      PL      RTND      03/30/2007